## WILLIAM B. OGDEN

*v.*

## GUSTÂVE STOCK.

REPLEVIN — *what is part of the freehold.* A purchaser of a city lot holding it under a contract of purchase, with clauses of forfeiture, erected a house thereon placed upon blocks lying on the ground, and having failed to make his payments on the contract, sold the house to a person who removed it from the lot. The vendor of the lot then replevied the house. *Held* that the vendee, while occupying the premises under his contract, had no right to erect a building thereon with intent to remove it; that such intent would be in fraud of his vendor's rights; that the purchaser of the building stood in no better position, and when he severed the house from the freehold the right of possession attached to the owner of the freehold, who could maintain replevin so long as the house could be identified, and was not permanently annexed to other realty.

APPEAL from the Superior Court of Chicago.

This was an action of replevin brought by the appellant against the appellee for the recovery of a house. On the trial below a verdict and judgment were rendered for the defendant. The facts appear in the opinion of the court.

Messrs. SCAMMON, McCAGG and FULLER, for the appellant, submitted the following points:

1. Under the circumstances, the house in question was the property of the plaintiff—it having been built upon land which he owned in fee, and in which Schuster had only an equitable interest, liable to be forfeited for default in making his payments for it.

"The adjudged cases are numerous, and seem to be uniform—that a purchaser under an unexecuted contract, occupying the relation of mortgagor to the premises, has no authority to remove annexations of a permanent character from the land." *Smith* v. *Moore*, 26 Ill. 392; *Eastman et al.* v. *Foster et al.*, 8 Metc. 26; 1 Hill. on Mort. 431, and cases cited in note; 1 Wash. on Real Prop. 2, § 4, and p. 7, §§ 21, 22; *King* v. *Johnson*, 7 Gray, 239, in which the rule, and the reasons for it, are fully and accurately stated.

2. The severance of the house from the lot, and its removal by the defendant was tortious, and replevin is the proper remedy. Rev. Stat. of 1845, ch. 88, replevin, sec. 1. *Davis* v. *Easley et al.*, 13 Ill. 149; *Chatterton* v. *Saul*, 16 id. 149.

The affidavit in this case shows that the house in question had been severed from the lot, and thus became the subject of an action of replevin.

Replevin is in many cases a concurrent remedy with trover and trespass, for injury to personal property, and lies where those actions can be maintained by mortgagees, and as to when they may maintain those actions see *Langdon* v. *Paul*, 22 Vt. 205; *Winslow et al.* v. *The Merchants' Ins. Co.*, 4 Metc. 306; *Stowell* v. *Pike et al.*, 2 Greenl. 387; 1 Hill. on Mort. 206, ch. 10; *Smith* v. *Moore*, 11 N. H. 55; *Frothingham* v.

*McKusick,* 11 Shepley, 403; *Sanders et al.* v. *Reed,* 12 N. H. 558; *Sands et al.* v. *Pfiefer et al.,* 10 Cal. 258, which was an action of replevin brought by a mortgagee to recover the machinery of a steam flouring mill, which had been severed from the mortgaged premises by the mortgagor, and is directly in point.

*Smith* v. *Goodwin,* 2 Greenleaf, 173, was an action of trespass, under circumstances like those in this case, and the rights of the mortgagee to a house erected on the mortgaged premises, after the execution of the mortgage, were sustained in that form of action. See also, *Cresson* v. *Stout,* 17 Johns. 116.

3. Schuster was in default in making the payments upon his contract, and Ogden had the right to treat it as forfeited, and was entitled to immediate possession of the premises, both by the terms of the contract and the ordinary rules of law, applicable to such cases. *Chrisman* v. *Miller,* 21 Ill. 227; *Steele et al.* v. *Biggs et al.,* 22 id. 643; *Prentice* v. *Wilson et al.,* 14 id. 91.

Having the general right of property, and the right of immediate possession, the plaintiff could maintain this action; 8 Bacon's Abridgment, 549, 550.

Mr. WILLIAM HOPKINS submitted the following points on behalf of the appellee:

1. That under the agreement between the appellant and Christian Schuster, his vendee, it was lawful for Schuster to enter into possession of the lot and occupy it, either by himself or by the defendant as his lessee or licensee until the appellant should declare the agreement forfeited, or demand possession of the lot.

It was agreed at the trial that the agreement had not been declared forfeited. It no where appears from the bill of exceptions, and it purports to give all the testimony, that demand was made either of the vendee or of the defendant below for possession of the lot, nor was any such demand proved.

2. That under the said agreement it was lawful for the

vendee to lease the lot to the defendant, and to license or permit him to occupy it and erect a building thereon, and remove the same therefrom, provided that in such erection and removal no injury was done to the realty.

3. That the court should determine whether or not the house in question was a fixture by the rule between landlord and tenant, and not by the rule between vendor and vendee — the defendant having erected and removed the building with the permission of the vendee, who was lawfully in possession under the agreement between him and appellant.

It is but fair to hold that the house in question was built by the defendant alone, and built with the permission of Schuster — for though Schuster swears the house was built by him and the defendant, yet the conclusion from the whole testimony is irresistable that Schuster's interest in the house was held but as security for the $150 advanced by him, and not as absolute owner of one-half.

4. That the appellant cannot recover unless the house in question was a fixture, or was built in fulfillment of the agreement.

The house built by the vendee in the fall of 1856, must be deemed to have been built and accepted as a fulfillment of the requirements of the agreement in that regard. It cannot be contended that the house in controversy was built in fulfillment of the agreement.

It was not a fixture.

" It rested on blocks standing on boards lying on the ground," was built by the defendant with the permission of the appellant's vendee, and the evidence clearly indicates that there was no intention to make it a fixture. *Curtis* v. *Hoyt,* 19 Comst. 154, 164, 170, and cases cited; *Smith* v. *Benson,* 1 Hill, 176; *King* v. *Wilcomb,* 7 Barb. S. C. 263; *Wells* v. *Bannister,* 4 Mass. 514.

5. That at the commencement of this action the appellant had no right to the immediate possession of the lot, and therefore no right to the possession of the house in question in this suit. The bill of exceptions admits there was no declaration

of forfeiture, and, from the bill, it in no way appears that possession of the lot was demanded or refused, or any notice to quit given, or that by declaration, notice or act, an intention was evidenced to end the agreement, or take possession of the lot, or any demand made for payment upon the agreement, or exercise of the election given to appellant by the terms of the agreement. There was proof merely of nonpayment, on which alone ejectment would not lie for the possession of the lot, and if ejectment would not lie, then this action cannot be maintained—and this is so, even if you concede that the house in question was a fixture, and that the defendant severed it from the realty, for the utmost 'that could be claimed as the effect of the act of severance would be, that, as against the defendant, the house should be deemed personalty. The mere commission of waste will not give the right to bring either ejectment or replevin.

Upon the fifth point the court is cited to *Prentice* v. *Wilson*, 14 Ill. 91; 5 Wend. 26; *Jackson, &c.*, v. *Rowan*, 9 Johns. 330; *Venable* v. *McDonald*, 4 Dana, 337; *Right* v. *Beard*, 13 East, 210; *Hatch* v. *Dwight*, 17 Mass. 289.

Mr. Justice Beckwith delivered the opinion of the Court:

This is an action of replevin, brought by the appellant for a dwelling house, alleged to have been wrongfully removed from a lot belonging to him, by the appellee. The pleas are *non detinet*, and property in the 'appellee. On the trial, it was admitted that the appellant, in 1856, and from that time to the commencement of the suit, had been the owner in fee of the lot from which the building was removed; and it appeared in evidence that while he was the owner of the lot, in 1856, he made a contract with one Schuster, to sell him the same for $525, of which $25 was paid in cash, and the residue was to be paid in five annual installments, the last of which fell due September 1, 1861. Four of the installments had become due, but only one of them had been paid. The contract provided that if the vendee should make default in any of the payments,

the vendor should have the right to consider the agreement terminated, and to treat Schuster, his representatives or assigns, as tenants at will, at a specified rent.

In 1858 while Schuster was in possession of the lot under the contract, he and the appellee erected thereon a dwelling house, under an agreement that each was to own one-half of the same. The house was placed upon blocks, resting on boards, lying on the ground. For about two years after the house was finished, Shuster occupied it with his family, and in January, 1861, sold his share to the appellee, to whom he gave permission to occupy the lot until September, 1861. The house remained on the lot until June, 1861, when it was removed by the appellee. The appellant demanded possession of the house, and upon the refusal of the appellee to surrender the same, commenced this suit for its recovery. Upon the trial in the court below, the jury were instructed that the appellant was not entitled to recover. The general rule of the common law is, that things affixed to the realty become part of it, and belong to the owner thereof; but erections, which, from their general nature and character, are ordinarily deemed a part of the freehold, may be made in such manner, or under such circumstances, as render them distinct and separate property. In order to do this, the person making the improvement, must have the right to determine whether or not, the erection shall become a part of the realty; and it must appear that it was not intended to form a part thereof.

The intention may be inferred, in some cases, from the manner in which the improvement is attached to the realty; and in others from the nature of the title of the party making it, or from the purpose with which it was made; but if the party making the improvement, as between himself and the owner of the soil, has no right to erect the same, as property separate and distinct from the freehold, an intention so to do, no matter how clearly manifested, is of no avail. Schuster, at the time the dwelling-house was erected, was the vendee of the appellant, in possession of the premises under an unexecuted contract requiring him to pay for the land and make it his own. He

was in default for a part of the payments already matured, owing a greater portion of the purchase-money, and paying no rent for his occupation of the premises. His enjoyment of the property was solely by reason of his agreement to pay for the same; and the law will presume that he intended to perform his agreement in good faith. It may well be presumed that the vendor, relying upon the agreement, and the additional security of the improvements for its performance, allowed Schuster to remain in possession after default in making his payments; and while in the enjoyment of the property under such circumstances, he could not, honestly, assert that he did not intend to perform his contract, and that he intended the erections on the lot as property separate from the freehold.

The law will not infer a dishonest intention, nor give effect to one when proven. The mode adopted in the construction of the foundation of the house would not, under the circumstances, show an intention on the part of the vendee to erect and maintain the same as property separate and apart from the realty. Having no right to claim that the improvements bore that relation to the freehold, he cannot be presumed to have made them with that intention. His position in regard to improvements was analogous to that of a mortgagor, who has no right to remove improvements he has put upon the land, permanent in their nature, for the reason that the law presumes that they were annexed with the design of being permanent. *Dooley* v. *Crist*, 25 Ill. 551. No intention at variance with this presumption is allowed to affect the rights of a mortgagee, or of a vendor, where the vendee is in possession under an obligation to make the land his own. *Smith* v. *Moore*, 26 Ill. 392. The appellee, at the time the house was built, was bound to take notice of the relation subsisting between the appellant and Schuster; and the evidence tends to show that he had actual knowledge thereof: what Schuster could not do, he could not authorize or permit another, either along with himself, or separately, to do; and, therefore, it is not perceived how the appellee, by joining with Schuster in erecting the building, under an agreement to become part

owner of it, and afterwards obtaining a conveyance of Schuster's interest therein, acquired any right to remove it from the premises.

The dwelling house, prior to its removal, was a part of the realty, and the legal title to the same was in the appellant. So long as the contract for the purchase of the land remained unexecuted, Schuster had only an equitable right to the house as a part of the realty, and the appellee acquired no greater right to it. They had no right of possession independent of their right to occupy the land, and when the house was removed from the realty their right of possession ceased. The severance and removal of the house were tortious acts, by which it was separated from the property which Schuster had a right to occupy, but did not change the legal title vested in the appellant as the owner of the freehold. The appellant's legal title drew to it the right of possession from the time Schuster's right of possession ceased. The appellant might have maintained trespass, or trover for the value of the house; therefore the action of replevin was sustainable, so long as the house could be identified, and was not permanently annexed to other realty. *Davis* v. *Easley*, 13 Ill. 192.

The judgment of the court below is reversed and the cause remanded.

*Judgment reversed.*