HUEBSCHMANN vs. McHENRY..

FIXTURES. — *Rights of land-owner as against trespasser.* — "*Improvement Act*" — *Remedy to be strictly pursued. Replevin.*

1. One who enters upon land of another, under a claim of right adverse to the true owner, and erects a building thereon, to be occupied by him as a dwelling, or otherwise used as a part of his adverse enjoyment of the land, has no right to such building as against the land-owner, although the same is of wood, resting only upon the surface, and not let into the soil.

2. As to the true owner such a building is a *fixture*, notwithstanding an intention on the part of the trespasser to remove it at some future time.

3. It makes no difference in such trespasser's right to the building, as against the land-owner, that he entered in good faith, under a lease from one who *claimed* to have a tax title to the land, and that, by the terms of such lease or the custom of the place, he was entitled, as against his lessor, to remove the building during his term.

4. Where such trespasser, after being evicted, entered upon the land and removed the building, it became, after such severance from the realty, and while in the possession of the trespasser, personal property, and the land-owner might maintain *replevin* therefor.

5. The statute (R. S., ch. 141, secs. 16, 33), which permits one holding land under color of title to recover the value of his improvements, after judgment against him in ejectment, treats such improvements as *a part of the realty;* and the remedy it provides must be strictly followed. If the party evicted removes fixtures from the land, he cannot set up any defense, under that statute, to the land-owner's action to recover their possession or value.

APPEAL from the County Court of *Milwaukee* County.

Action of replevin, to recover a one-story frame building, 14 by 20 feet in size, alleged to have been unjustly taken and detained by the defendant. The defendant denied the allegations of the complaint, and claimed title and right of possession in himself, and that the building was real property.

The action was commenced and first tried in a justice's court, and a judgment there rendered for the delivery of the property to the plaintiff and for damages, from which the defendant appealed to the county court. On the trial in that court, the evidence showed that the defendant erected the building in question, upon a lot in the city of Milwaukee, which he held as lessee of a third party who claimed title to such lot under a tax deed; that he occupied the same as a dwelling house; that it was not in any way attached to the ground, but rested on posts, which stood upon and were braced to planks lying on the surface; that, after the plaintiff had recovered a judgment in ejectment against the defendant for the lot on which the building stood, and the sheriff had demanded possession thereof by virtue of an execution on such judgment, the defendant had in the night time commenced moving the building, and while it was standing on rollers, partly on and partly off the lot, the sheriff had removed the defendant's family and goods from it, and formally delivered possession to the plaintiff, who entered and nailed up the doors and windows. Some weeks afterward, the defendant removed the building to another lot, and there occu-

pied it when this suit was commenced. There was also proof that, by a long existing custom in the city of Milwaukee, buildings erected by tenants on leased lots were considered and treated as personal property, and in the absence of any restriction in the lease, might be removed by such tenants at the expiration of their tenancy. Proof that defendant's lease had not expired when he was ejected was offered, but ruled out as immaterial and incompetent. The court directed a verdict for the plaintiff, and the defendant appeals from the judgment rendered thereon.

*Johnson & Rietbrock,* for appellants:

1. The only ground upon which the respondent can claim the building in question is, that it became part of his land by being erected thereon without his consent, and passed into his possession by virtue of his judgment. It was erected under a usage which made it the personal property of the appellant, and the assertion of a dormant title to the land on which it stood could not change it into realty. One who erects a building upon the land of another, in good faith and under color of title, may remove it without incurring any liability to the land owner. 1 Hilliard on Real Prop., 8; *Wickliffe v. Clay,* 1 Dana, 591; *Wells v. Banister,* 4 Mass., 514. The right to remove has been held to depend upon the fairness or unfairness of claiming the structure as personal property, or the honest intent of the party erecting it as to its being permanent or moveable. *Ogden v. Stock,* 34 Ill., 522; *Snedaker v. Warren,* 2 Kern., 170.

2. By our statute, the defendant would have been entitled to compensation from the plaintiff for his building, if considered a permanent improvement. *Pacquette v. Pickness,* 19 Wis., 219, 222; *Green v. Dickson,* 9 id., 532. The equitable principles upon which the "improvement act" is based, should be applied to such a case as this. To regard such structures, under such circumstances, as the personal property of those who made them, is manifest equity. It is a matter of grave doubt whether the house in question would, under any circumstances

or between any parties, be regarded as part of the realty. *Rogers v. Woodbury*, 15 Pick., 159; *Marcey v. Darling*, 8 id., 283; *Doty v. Gorham*, 5 id., 487. 3. This house, if it became plaintiff's property by being built on his land, was real estate. After it was removed to and placed upon another lot, it was still real estate, and could not be replevied. *Powell v. Smith*, 2 Watts, 126; *Vausse v. Russell*, 2 McCord, 329; 1 Hilliard on Torts, 476 and cases cited. 1 Chitty Pl., 163; *Reese v. Jared*, 15 Ind., 142.

*E. F. Cook*, for respondent:

The judgment in ejectment was conclusive as to the title to the house. *White v. Coatsworth*, 2 Seld., 137. The defendant was a mere trespasser. He placed the building on the lot without the privity or consent of the plaintiff, and occupied and treated it as part of the realty. By severance from the lot it became personalty, and subject to this action. *Morgan v. Varick*, 8 Wend., 587. He had no right to enter and take the building, three weeks after possession had been delivered to plaintiff. 6 Johns., 5; 14 id., 406; 2 Seld., 137; 15 Barb., 590; 24 Wis., 295; *Elwes v. Mawe*, 3 East, 12; *Doty v. Gorham*, 5 Pick., 487; *Keogh v. Daniell*, 12 Wis., 163; *Wrigglesworth v. Dallison*, 1 Smith L. C., 670; *Ruan v. Gardner*, 1 Wash. C. C. R., 146, 149.

Proof of usage or custom is received only to show the intention of parties. 1 Smith L. C., 508; 2 Seld., 97.

DIXON, C. J. Counsel for the defendant argue very ingeniously and very ably for their several propositions, but we do not think any of them can be sustained. It appears that the house in question was erected by the defendant as the tenant of the lot, under a lease from a third person, who had no title but claimed to own by virtue of a tax deed. The actual title and exclusive right of possession were at that time in the plaintiff. It appears also, that, under the lease and by the usage prevailing in Milwaukee, the tenant or lessee in such case has the

right, as between himself and the landlord or a purchaser from him, to remove structures so erected at any time before the expiration of the lease. It furthermore appears that the lease had not yet expired when the plaintiff in this action recovered judgment in ejectment against the defendant and ousted him from the possession of the house and lot, and when the defendant re-entered and removed the house from the premises. And an additional fact also, was, that the building, which was a small one story wooden structure, occupied by the defendant with his family, stood upon some small posts set up and braced upon some planks laid on the surface of the ground. The foundation of the building was not let into the soil. It is upon facts like these, proved or offered to be, that the propositions of counsel mainly rest, to show that as against the present plaintiff the defendant had the right to remove the house and to retain and hold it as his own property.

The short answer to all argument, based upon the facts first stated is, that, notwithstanding all of them, the defendant was, as against the plaintiff, a mere trespasser upon the lot, and that the case, in reality, stands as if the alleged tax title holder had himself entered and put up the house and occupied it, and had then been in like manner dispossessed. And if the latter had been the case, and if the builder had intended at some future time to remove the building, counsel would hardly contend, we think, that such intention, whether openly expressed or otherwise, would bind the plaintiff, or bar or affect his rights as the real owner of the soil. Counsel cite authority to the effect that the actual owner of the land is not to be prejudiced, or his rights defeated by any such intention. And, indeed, it would be strange if such were not the law, or if it were to be held that the mere trespasser, entering without any title and erecting buildings or other improvements, having in all other respects the character of fixtures, could show that they were not, by showing that his intention was at some future day to remove them. This would be a new way of defeating the

rights of the owner of the soil to fixtures and improvements thus annexed, and which, by the common law as it now exists and always has, confessedly belong to him. And if the holder of the alleged tax title could not have defeated the claim of the plaintiff on this ground, then how can this defendant? It is at most, so far as the plaintiff is concerned, but mere proof of intention on the part of the defendant.

It cannot of course be contended that, because the defendant entered into a contract with a total stranger — one having no title or interest in the lot or right to lease it — that he might remove the building, therefore the plaintiff is bound by that contract. Counsel do not intend to say, because the defendant bargained with a stranger, that he might remove any building he erected upon the lot, that hence he could do so. Hence it is that the whole proof on this subject is but mere proof of intention, and the question is, whether that intention on the part of the trespassing occupant can transform what would otherwise be a fixture and part of the freehold, belonging to the owner of the land itself, into a personal chattel, which shall be and remain the property of such occupant. There may be cases, it is true, between landlord and tenant, and perhaps others, where the intention of the tenant erecting the structure to remove it, and the purpose for which it is erected, enter into the question of its character, as whether a fixture or not, and from which the tenant's right of removal may be determined. But no such considerations can, as it seems to us, enter into the question so far as a mere tort-feasor is concerned, where the nature of the structure is such as is ordinarily intended to improve the land and to adapt it to the use and enjoyment of the occupant. The entry here was an assertion of title in the soil, if not in the defendant, at least in the party under whom he entered. It was an entry with intention to hold an adverse possession. In pursuance of such entry and assertion of title, and with such intention, the house was erected to be used with the land and as a part of it, or part of the tenant's

estate and interest in it. The case had, therefore, every element which characterizes the act of a tort-feasor who annexes his structure to the freehold, and is therefore presumed to intend to change the nature of his chattel and convert it into realty, and thereby to give it to the holder of the paramount title, in case he should be subsequently evicted by such holder. In such case, it seems clear that no proof of previous intention on the part of the wrong-doer to remove or sever the structure from the freehold, should be admitted for the purpose of changing its character from real to that of personal property, as between him and the actual owner of the soil.

The point that the building here was not a fixture or annexed to the freehold, because it was not built upon a brick, or stone or other foundation let into the ground, is not much pressed, and is untenable. The notion that any such physical attachment is necessary in order to constitute a fixture, which once prevailed, has been almost entirely abandoned. The true rule now for determining whether a thing is to be regarded as a fixture or not, is said to be, to consider the character of the act by which the structure is put in place, the policy of the law connected with its purpose, and the intention of those concerned in the act. *Meigs' Appeal*, 62 Pa. St., 28. We have seen that the building here was erected by a mere trespasser, entering in hostility to the true owner, under a claim of superior title, and that it was so erected for his permanent use and enjoyment of the lot, and as accessory thereto and parcel of his supposed estate in it. We have seen also that his intention at some future period to remove it, or his agreement with a stranger that he might do so, is of no avail as against the real owner. As to such owner, therefore, the building was a fixture. And in such case, also, it can make no difference that the trespasser was a tenant from year to year, or for a term of years, under some other person. It is not like the case of a tent spread, or hut erected, for his mere temporary use, where no permanent right of occupation or adverse title to the soil is

asserted or intended to be.  A question is also made, whether, the building being a fixture, the removal from the plaintiff's lot converted it into personal property, so that the action of replevin could be maintained for it.  The severance undoubtedly made it personal property, so that the plaintiff could sue in that form of action.  In this all the authorities seem to agree.

But another question likewise raised is, the building having been placed upon another lot before the suit was brought, whether it did not thereby again become real estate so as to debar the action.  Some such doctrine appears to have been held in *Reese v. Jared*, 15 Ind., 142 ; but the party there, upon whose lot the house was removed, was not a trespasser, but had bought, the house in good faith from the person who built it on the lot of the plaintiff, and had paid him for it.  The house had been set upon a permanent brick foundation.  Here, however, the defendant, when he removed the house, was a trespasser.  He had no legal right to remove it, and had been warned not to do so.  This case would, therefore, seem to fall within the other principle laid down by Kent, and which was likewise quoted in the case last referred to.  He says :  " The English law will not allow one man to gain a title to the property of another upon the principle of accession, if he took the other's property wilfully as a trespasser.  It was a principle settled as early as the time of the Year Books, that whatever alteration of form any property had undergone, the owner might seize it in its new shape, and be entitled to the ownership of it in its state of improvement, if he could prove the identity of the original materials."  2 Com., 363.  This principle, we think, should govern here, especially as it was not shown that the house had been permanently annexed to other realty.  The severance and removal were tortious acts by which the house was separated from the land of the plaintiff, but they did not change the legal title and right of possession vested in the plaintiff as the owner of the freehold.  Trespass or trover for the value of the house might have been maintained, and therefore replevin would lie, which is a

concurrent remedy by our statute. The action was the same in *Ogden v. Stock*, 34 Ill., 522, and was maintained. See also authorities there cited.

Another and the last proposition is, that, as the defendant was a tenant in possession claiming under color of title, and had erected the building in good faith, and as, under the statute, persons so making permanent improvements upon lands are entitled to be paid for such improvements by the true owners of the lands when they assert their titles, therefore, the defendant had the right to regard the house as his personal property, and to remove it, as a kind of substitute for that remedy. It would be a very wide departure from the principles recognized by the statute to allow this to be done. The statute, pursuing the rule of the common law, recognizes the improvements as absolutely a part of the realty, and not severable therefrom and so to belong to the owner of the realty. It does not attempt to disturb this common law rule, but only to preserve and work out what was deemed the equity of the party who thus made permanent improvements on the land of another. For this purpose it has declared his rights and prescribed what his remedy shall be ; and to that remedy, we think, he must be strictly confined, until the legislature has seen fit to give some other. The party making the improvements cannot, at his pleasure, sever and take them away, and then insist upon the equity recognized and defined by the statute, as a defense to a suit at law brought against him to recover them or their value. He must take his remedy in the manner prescribed by the statute, and cannot have it in any other form.

*By the Court* — Judgment affirmed.