## CENTRAL BRANCH RAILROAD COMPANY V. HENRY T. FRITZ.

1. DWELLING-HOUSE; *When Personalty, and Not Part of the Realty.* A. entered into a written contract to sell a certain piece of land to C. This contract contemplated that C. should take possession of the land, build a residence thereon, and make other improvements thereon, and that all such improvements should remain on the land until all the terms and conditions of the contract should be complied with and fulfilled, and that if any of such terms or conditions should not be fulfilled, then that the contract should be at an end, and that all the improvements made on the land should remain thereon, and be the property of the owner of the realty. C. assigned said contract and all his rights thereunder to D., and D. built a dwelling-house on said land, and resided therein. Said dwelling-house was a small one-story frame building, and was set upon blocks of wood, the highest one being about one foot. Afterward D. removed said house into the highway adjoining the land, and then assigned said contract, and all his rights thereunder to B., and also at the same time sold said house to B. for $200 to be paid in one year, and B. then removed said house to his own land, and placed it on a permanent stone foundation, intending to make the house a part of his real estate, and to make it his own. The terms and conditions of said contract were not fulfilled, but were violated before the removal of said house from the land of A., and also by such removal. *Held,* That said house, while it was on the land of A. was real estate, and belonged to A., subject to said contract; that when it was removed into the highway it became personal property of A., and belonged absolutely to him; and that after it was removed from the highway, and placed on a permanent stone foundation on B.'s land, it still remained the personal property of A., and did not become a part of the real estate of B.

2. ——— *May be Replevied, as Personalty.* Where a house, which is a
chattel, and belongs to A., is wrongfully removed and placed upon a
permanent stone foundation on the land of B., B. intending at the time
to convert the house into real estate, and to make it his own, and the
house is one that can easily be removed from the land of B. without
any substantial injury to either the house or the land, such house does
not thereby become a part of the realty belonging to B., but remains
merely a chattel belonging to A., and A. may recover the same in an
action of replevin.

### Error from Jackson District Court.

REPLEVIN for a certain dwelling-house, brought by the
*Railroad Company,* against *Fritz.* All necessary facts are
stated in the subjoined opinion. The district court, at Octo-
ber Term 1876, gave judgment in favor of defendant, and
the *Railroad Company* brings the case here on error.

*D. Martin,* and *A. S. Everest,* for plaintiff.
*W. S. Hoaglin,* for defendant.

The opinion of the court was delivered by

VALENTINE, J.: This was an action of replevin brought
by the Central Branch Union Pacific Railroad Company, and
Ralph M. Pomeroy, as Trustee, &c., against Henry T. Fritz,
for the recovery of a house. The case was submitted to the
Statement of    court below upon the pleadings and upon an
the case.    agreed statement of facts; and upon said plead-
ings and agreed statement of facts the court below found in
favor of the defendant and against the plaintiffs, and rendered
judgment accordingly. The principal material facts are as
follows: The railroad company owned a certain piece of land,
containing eighty acres, more or less. It agreed in writing
to sell the same upon certain terms and conditions to John C.
Archer. The principal of said terms and conditions, so far as
they have any application to this case, are as follows:

"The first party hereby agrees to sell unto the second party
said land for $952, with interest—the principal to be paid
in eight equal annual payments, and the interest to be paid
annually in advance. Archer is to take immediate possession

of the land, and agrees to improve and cultivate the same; and agrees that no wood shall be cut on the land except for the erection thereupon of buildings and fence, and the necessary purposes of fuel for the family residing thereon, and that all improvements placed upon said premises shall remain thereon, and shall not be removed during the continuance of this contract; and further, that he will make punctual payment of the above sums as each of the same respectively becomes due, and that he will regularly and seasonably pay all such taxes and assessments as may be lawfully imposed on said premises. But in case the second party shall fail to make the payments aforesaid, and each of them punctually, and upon the strict terms and times above limited, and likewise to perform and complete all and each of his agreements and stipulations aforesaid, strictly and literally, without any failure or default, then this contract, so far as it may bind said first party, shall become null and void, and all rights and interests hereby created, or then existing in favor of the second party, or derived from him, shall cease and determine, and the right of possession, and all equitable and legal interests in the premises hereby contracted, shall revert to and revest in said first party, without any declaration of forfeiture, or act of reëntry, or any other act by said first party to be performed, and without any right of said second party of reclamation or compensation for moneys paid or improvements made, as absolutely, fully, and perfectly as if this contract had never been made."

This contract was entered into on 22d March 1872. On November 4th, next following, Archer assigned the same, and all his right, title and interest in and to said land, to Samuel C. Hunt. The contract itself contemplated that it might be assigned. Hunt immediately took possession of the land and erected the house in controversy thereon. Said house was a one-story frame building, about 16 by 24 feet in size, and was set upon ten blocks of wood, the highest one being about one foot, so that said house almost touched the ground on one side, and was about one foot from the ground on the other side. Said house was built for and occupied by the said Hunt and his family as a residence on said premises, and the said Hunt and family occupied the same as their residence until about the 1st of September 1875, at which

time he removed said house from said premises, and into the highway adjoining said premises; and three or four days thereafter said Hunt sold said house to the defendant Henry T. Fritz, for the sum of $200, for which sum said Fritz gave to Hunt his negotiable promissory note, payble one year after .date, with interest, and Hunt at the same time assigned and transferred to Fritz the said written contract originally entered into between said railroad company and Archer. Fritz then removed said house from the highway to and upon his own premises, being the west half of the northwest quarter of section 34, in township 5, of range 16, Jackson county, where the same was placed upon a permanent stone foundation, and was standing, when the same was taken by writ of replevin in this action. No payment was ever made on said land except the first annual installment of interest. All the parties had full notice of all the foregoing facts.

That said contract was violated by the failure to make the payments therein stipulated, and also *by the removal of said house from the land on which it was built,* we think must be admitted. And hence it follows from the terms of the contract itself, that all rights held thereunder, by Archer and his assignees, were forfeited to the plaintiff; and hence it also follows, that at the time the defendant purchased said house, and at the time he placed it on a stone foundation on his own premises, it belonged to the plaintiff, and the plaintiff had a right to replevy the same. (*Ogden v. Stock,* 34 Ill. 522; *Mills v. Reddick,* 1 Neb. 437; *Hartwell v. Kelley,* 117 Mass. 235; *Huebschmann v. McHenry,* 29 Wis. 656; *Sands v. Pfeiffer,* 10 Cal. 258; *Laflin v. Griffiths,* 35 Barb. 58; *Congregational Society v. Fleming,* 11 Iowa, 533; *Davis v. Easley,* 13 Ill. 192.) Whether the plaintiff could still replevy the house after it was placed upon a permanent stone foundation upon the defendant's premises, is a more difficult question. In Nebraska, we think it would be held that replevin would lie, and probably also in Massachusetts; (*Mills v. Reddick,* and *Hartwell*

1. Dwelling-house, when personalty.

*v. Kelley,* supra;) while in Indiana, it is possible that a different rule would prevail; (*Reese v. Jared,* 15 Ind. 142.) That is, in Nebraska it would be held, that a mere wrong-doer, by merely placing a house belonging to another upon a *permanent foundation* on his own land, could not thereby so change the character of the property that notwithstanding any objection the owner might make he (the wrongdoer) would nevertheless convert the property from a chattel into real property, and transfer the title thereto from the owner thereof to himself. The decision in Indiana may differ from that in Nebraska, and from that in Massachusetts; but we do not think it goes to the full extent of declaring a contrary doctrine. It does not appear in the Indiana case, that Schmall, the owner of the land, was a mere wrongdoer, although in law he had no right to the house as against the original owner, until after it was placed on a permanent foundation on his own land.

It is true, that whether a thing is to be considered as a part of the realty or not, always depends upon its connection with the soil; but this connection may be slight, as well as strong, remote, as well as near, and constructive, as well <span style="font-style:italic"></span>

*Changing personalty into realty; general principles.* as natural or absolute; and the question also depends upon other and various considerations, as well as attachment to the soil. Thus, keys belonging to a house, mill-stones, etc., belonging to a mill, are parts of the realty, although they may not, for the time being, be near the realty to which they belong. In such cases, the articles in question are constructively attached to the soil. But attachment to the soil is, as we have already suggested, only one of several conditions which help to determine whether a given thing belongs to the realty or not. A thing may be ever so closely and intimately attached to the soil, and may in fact never have had any independent existence, and yet it may not be a part of the realty. Thus, growing crops, and nurseries of young trees, are only chattels, although their roots extend deep into the soil. The question depends upon many considerations; and this is particularly so where the

article in question was formerly a chattel. Thus, it depends, 1st, upon the *annexation* of the article in question to the realty; and as this annexation may be actual, or constructive,

Fixtures. direct, or remote, firm, or loose, and as the article itself may be great, or small, ponderous, or light, and strong, or fragile, it depends also very much upon the *ease and convenience* with which the article may be again *separated* from the realty. 2d, It depends upon the *right* of the parties to so annex the article; that is, the right of the parties *to so use the article*, and the right of the parties *to so use the realty;* and as there may be various parties interested · in the use or ownership of the article, and in the use and ownership of the realty, this right may be very complex and intricate. 3d, It depends upon the *intention* of the parties; that is, the intention of the parties making the annexation, the intention of the parties owning and entitled to the use of the article, and the intention of the parties owning and entitled to the use of the realty. Of course, it depends upon the *right* of the various parties to *form* this intention, and their right to *execute* such intention; but this proposition is probably included in the second proposition above stated. 4th, It also depends upon the adaptability of the article to be used as a part of the realty to which it has been annexed. This is particularly true where the article in question has only a slight connection with the realty, or where it has only a constructive annexation thereto. This question, when a chattel becomes a fixture, and a part of the realty, has already in several of its various aspects been discussed by this court, in the cases of *Evans v. Estes*, 10 Kas. 314, and *Shoemaker v. Simpson*, 16 Kas. 43; and to these cases we would refer. The question whether a given thing is a part of the realty, or not, depends upon so many questions that many of the decisions would seem, to a superficial observer, to be inconsistent and contradictory; and yet nearly all of such decisions may be harmonized. Thus, dry stones, or rails, laid one upon another so as to constitute a fence, are held to belong to the realty, although they have no attach-

ment to the soil except that produced by their own weight. It has even been held, in Wisconsin, "that where rails have been placed along the line of an *intended fence* for the purpose of being laid in the fence, though not actually applied to that use, they pass by a deed of the land, there having been a manifest appropriation to the use of the land." (*Conklin v. Parsons*, 1 Chandler, 240, 244.) It has also been held, that rolling-stock belonging to a railroad company is sometimes real property. (Ewell on Fixtures, 34, et seq.) It has also been held that a wooden house, easily removable, resting upon blocks lying upon the ground, or resting upon the surface without being let into the soil, is nevertheless a part of the realty. *Ogden v. Stock*, 34 Ill. 522; *Huebschmann v. McHenry*, 29 Wis. 655; *Reid v. Kirk*, 12 Rich. (S. C.) 54. On the other hand, it has been held that a stone pier, "firmly imbedded in the earth," was under certain circumstances only personal property. (*Wagner v. C. & T. R. Co.*, 22 Ohio St. 563.) It has also been held that structures resting on solid foundations firmly imbedded in the earth, are sometimes only personal property. (*King v. Otley*, 1 Barnwell & Adolphus, 161; *Wansborough v. Maton*, 4 Adolphus & Ellis, 884. Many American cases might also be referred to on this point, among which see, *Hartwell v. Kelly*, 117 Mass. 235; *Winte's Appeal*, 10 Penn. St. 252; *Adams v. Goddard*, 48 Me. 212; *Alexander v. Touhy*, 13 Kas. 64.) Even dwelling-houses, resting upon solid and firm foundations, are sometimes not a part of the realty, but only chattels. (*Mills v. Reddick*, 1 Neb. 437; *Fuller v. Tabor*, 39 Me. 519; *Dame v. Dame*, 38 N. H. 429, and cases there cited; *Van Ness v. Pacard*, 2 Peters, 137; *Osgood v. Howard*, 6 Me. 452; *Adams v. Goddard*, 48 Me. 412. See also, *Alexander v. Touhy*, 13 Kas. 64; and *Hartwell v. Kelly*, 117 Mass. 235.) The question in such cases, as to whether the houses are real property, or only chattels, is determined by many other considerations, as well as annexation to the soil. In some cases it is probable that a thing may be considered both as real estate and as personal property. For instance: suppose the grantor should

2. When replevin lies.

wrongfully keep the keys to the house which he sells, and the grantee should sue him therefor in an action of replevin; the grantee in such a case might probably consider the keys as real estate, for the purpose of giving him a title to them, and as personal property for the purpose of recovering them in replevin. There are certainly many cases in which a party would have the right to elect whether he would consider a certain thing as real estate, or as personal property. All the foregoing remarks have reference to what are usually denominated "fixtures;" that is, articles which were previously chattels, but which have been more or less intimately connected with real estate, and do not have reference to things which were always connected with the real estate.

In the light of the foregoing remarks we may now decide this case. Said house was built in pursuance of said contract. The contract contemplated that a dwelling-house should be built on the land which the railroad company contracted to sell to Archer; that it would be of a permanent character; that it should remain on the land until all the terms and conditions of the contract were complied with and fullfilled; and that if any of the terms or conditions should not be fulfilled, then that the contract should be at an end, and all the improvements made on the land should remain thereon and be the property of the owner of the realty. Said terms and conditions were not fulfilled. The house was removed from the land, which removal was itself a violation of the contract. The house then became personal property, (at least, at the election of the plaintiff it became personal property,) and belonged to the plaintiff. And the defendant could not then by removing it onto his own land, and placing a stone foundation thereunder, transform the house into real estate, or transfer the title thereto from the plaintiff to himself. We think the house was real estate when it was first built on the plaintiff's land. Its attachment to the soil would not alone and of itself have made it so; but such attachment, taken together

Application of principles to facts.

with the agreement of the parties, as expressed in their contract, made it so. It became personal property when it was detached from the plaintiff's land. And when it was removed onto the defendant's land, it did not again become real estate; and certainly, not as against the interests and wishes of the plaintiff. At common law, before a chattel could become real estate by its *annexation alone* to real property, it had to be fastened to the real property by some mode more staunch and firm than the mere strength of its own weight. This has been settled by the two English cases already cited. In the first of such cases it was decided, that where a "mill was of wood, and had a foundation of brick, but the wood-work was not inserted in the brick foundation, but rested upon it by its own weight alone," that the mill was only a chattel. In the second case, it was held that where "a wooden barn" was "erected on a foundation of brick and stone, the foundation being let into the ground, but the barn resting upon it by weight alone," the barn was only a chattel. In these two cases there was nothing but the mere foundations showing that the mill and barn should be considered as real estate; and the court held that they were not sufficient for that purpose. In the present case, there is nothing showing that the house in controversy should be considered as real estate when replevied, except merely the stone foundation, and the defendant's intention; and we do not think they are sufficient. The defendant had no right to place the house upon said stone foundation; nor had he any right to form the intention of making the house real estate. His placing the house upon a stone foundation had no more effect upon the character of the house than if he had placed it upon a stone pavement, or upon the earth itself; for he had no right to place the house upon either. The house and foundation were not built at the same time, as parts and portions of a single whole, but were built separately; and the house, at the time it was placed on said foundation, and afterward, was a movable structure. It is our opinion therefore, that the house at the election of the plaintiff, was personal property at the time it

was replevied, and that the plaintiff had a right to replevy it. Of course the plaintiff could have elected to consider it real estate if it had so chosen, but it did not so choose. Whether the defendant ever used this house as a dwelling-house, or indeed whether he ever used it for any purpose, is not shown. His right therefore to it rests merely upon the fact that he placed it upon a stone foundation, intending to make it real property and his own property. Upon this part of the case we do not wish to decide more than is necessary to be decided in the case. Hence all that we decide in this connection is as follows: Where a house, which is a chattel, and belongs to A., is wrongfully removed and placed upon a permanent stone foundation on the land of B., B. intending at the time to convert the house into real estate, and to make it his own, and the house is one that can easily be removed from the land of B. without any substantial injury to either the house or the land, the house does not thereby become a part of the realty belonging to B., but remains merely a chattel belonging to A., and A. may recover the same in an action of replevin.

The judgment of the court below will be reversed, and cause remanded with the order, that judgment be rendered in favor of the plaintiff and against the defendant on the agreed statement of facts.

All the Justices concurring.