## HOOPER'S EXECUTOR *vs.* SMITH AND WIFE.

1. Under the act of 1848, securing to married women their separate estates, a *feme covert* may charge, sell or dispose of her property without the consent or concurrence of her husband.

ERROR to the Court of Probate of Dallas.

THE plaintiff in error, as executor of John Hooper, deceased, was cited to make a final settlement of said estate. The decree of the Court of Probate was reversed on error in favor of Smith and wife, and the cause was remanded.—See 20 Ala. 245.

After the cause was remanded, the executor offered in evidence a written assignment or power of attorney, executed by Mrs. Smith, by which she transferred all her interest in said estate to James McDearman and others, and also a receipt from her to McDearman, acknowledging that he had satisfactorily accounted to her for her distributive share of said estate. But the court nevertheless rendered a decree against the executor, in favor of Smith and wife, for the distributive share of the wife, and this decree is now assigned for error.

N. HARRIS, for plaintiffs in error, contended :

1. That the settlement should have been made, and the rights of the parties determined, according to the act of 1848, as the will was admitted to probate after the passage of that act and before the passage of the act of 1850.—Kidd v. Montague, 19 Ala. 623.

2. That a *feme covert*, as to her separate estate, is regarded

as a *feme sole*, and has the same power of disposition that she would have if sole.—2 Bright on Husband and Wife 220 § 1, 223 § 8, 225 § § 17, 21 ; Clancy on H. and W. 347 ; Bradford and Wife v. Greenway, Henry & Smith, 17 Ala. 804.   Therefore Mrs. Smith's deed of September 14, 1848, conveyed all her interest in the estate to her assignee.

3. That the receipt of Mrs. Smith for the money was a valid payment on the part of the executor, and discharged him from all further liability.—2 Williams on Executors 1217 ; 1 Roper on Legacies 887 ; 2 Lomax on Executors 145.

I. B. STONE, *contra*, insisted :

1. That a *feme covert* can exercise no powers in relation to her separate estate, except those conferred on her by the instrument which creates such separate estate.—14 Smedes & Mar. 56 ; 4 Barr 93 ; 7 Sm. & M. 68 ; 14 Ala. 121.

2. That the separate estate of Mrs. Smith was created by the act of 1850 ; that under this act the legal title in the property vested in the husband as trustee, and therefore a payment to the wife will not discharge the executor.—2 Williams on Executors 871 ; 1 Roper on Legacies 595 ; Toller on Executors 320, and authorities there cited.

PHELAN, J.— When this case was last here, (20 Ala. 245,) it was sent back in order that Smith, the husband of one of the legatees under the will of John Hooper, should be made a party to the settlement of his estate in the Probate Court.

Upon the last hearing before the Probate Court of Dallas, there was no contest between the executor and the other legatees. The matter was narrowed down to a contest between Smith and wife (for the use of Mrs. Smith) against the executor, respecting the legacy or share of Mrs. Smith under the will of her brother, the testator.

By way of defence in this contest with Smith and wife, (use of the wife,) the executor made proof that he had previously paid to an assignee or agent of Mrs. Smith the full amount of her share or legacy, and received from said assignee or agent a final receipt and discharge.   The fact was not disputed.   The only thing to be considered was, the law arising upon this state of facts.   The Probate Court decided, that it was no defence,

and gave judgment against the executor in favor of Smith and wife (use of the wife) for the whole amount of the wife's legacy; and this decision is assigned for error. The judgment as entered is not expressed to be for the use of the wife, but that is an error which would be amended here, as being clerical in its character. The amendment will be considered as made.

John Hooper's will was admitted to probate 10th July, 1848, at which time the act of 1st March, 1848, of this State, " to secure to married women their separate estates," (Acts of 1848, p. 79,) was in force, and is the law that must govern and regulate the rights of Mrs. Smith in reference to the property or legacy which she acquired under that will. The act of 1850, on the same subject, though retroactive in some of its provisions, and expressly designed to be so, does not affect the rights of the wife as fixed by the previous act, so far as the question we are now considering is concerned.

The act of 1848 simply declares, that all the property of every kind held by a woman at the time of her marriage, or subsequently acquired by her in any manner, should " be taken, held and esteemed in law as the separate estate of such woman, and for her sole and separate use, notwithstanding her coverture;" and the husband is expressly excluded from all interest in the same, except such as the act itself confers; which is the right to one half absolutely of her personal property, if she dies intestate, and one half for life of her realty.

The second section of this act declares, that " said property (the wife's) shall be taken, esteemed and held as trust property, and subject to and governed by all the rules of law governing trust estates."

The act is silent upon the subject, but the courts have decided, that the husband is to be considered a trustee in respect to his wife's property under this act.—Key v. Vaughan, 15 Ala. 497.

The rights of a married woman under the act of 1848 may then be considered, so far as respects her power over her separate estate, very similar if not precisely like those of a married woman to whom a separate estate is given by deed or will, without any limitation as to the manner in which she may dispose of it, and in which no trustee is named. What is the law of such a case ? We have seen that the law makes her husband a trustee as to this

78

property. But what next are her rights over it? Can she create a charge upon it, sell or dispose of it at her own pleasure, without the consent or concurrence of her trustee?

We think the authorities are clear, that a woman having a separate estate distinguished by such features, may charge it, or sell or dispose of it at pleasure, and without the consent or concurrence of her trustee, during life, and may make a will of it, if personal property, at her death; and that a court of law to some extent, and a court of equity to the fullest extent, will give validity to her acts. The doctrine is, that in respect to her separate estate, a married woman is to be considered a *feme sole*. And where the deed, will or other instrument creating the separate estate (for instance our statute) imposes no restrictions or conditions on the power of alienation or absolute disposition, the law will impose none, except such as it imposes upon a *feme sole*.

I will here transcribe what Mr. Clancy says upon this subject. He winds up a critical examination of the cases with the following paragraph, which may be considered as presenting in few words the law governing this interesting and important question in the English courts:

" It, therefore, may be now considered as the settled law of our courts of equity, that whenever property has been given to the separate use of a married woman, the gift being unaccompanied by any power of appointment, she is so far to be treated as a *feme sole* in respect to it, that she may (as in cases where she has a power of appointment) dispose of it by will, or by grant of an annuity out of it, and that she may sell her reversionary interest in it; and these cases also prove, that a *feme covert* having separate property, with or without an express power of appointment, may exercise her right of ownership over it, without the consent of her trustees, and even in opposition to them, (unless the terms of the gift require their concurrence,) however improvident the transaction may be, provided it does not appear that she was coerced on the occasion, or that any fraud had been practiced upon her."—Clancy on Husband and Wife 321, and authorities there cited.

The same doctrine, the substance of which is, that a married woman having a separate estate derives her power of alienation, the *jus disponendi,* from the law itself, and not from the

deed creating such separate estate, and that therefore the power exists where it is not expressly restricted or taken away, has been followed in this country by the courts in New York, and opposed by those of South Carolina and some of the other States.— See Jaques v. M. E. Church, 17 John., where the question is carefully considered, and the cases cited; see also, Fireman's Ins. Co. v. Bay, 4 Barb. Sup. Ct. p. 407, to the same effect; also, 20 Conn. 147, Imlay v. Huntington. In the case of Bradford and Wife v. Greenway et al., 17 Ala. 797, this court has already shown a leaning the same way. The question being now submitted for decision, we shall hold the rule adopted by the English and New York cases, which gives to the wife having a separate estate the *jus disponendi*, unless the same is taken away or restricted by the deed or other instrument creating the separate estate.

The decision of this point is decisive of the case, and shows that the Probate Court should have allowed the executor to set up as a defence against the claim of Smith and wife, (for the use of the wife,) the deed of Mrs. Smith of 14th September, 1848, by which, in consideration of natural love and affection for her children by her first marriage, she assigned to them her interest in her brother's estate, and by which she made McDearman, one of the assignees, and her son, J. D. Motley, or either of them, her agent and attorney in fact, to sue for, recover, collect and receipt for the said interest or legacy. This deed was admitted. The proof further showed that, previous to the last settlement, the said McDearman have received from the executor, and executed his receipt for the same, the full share to which Mrs. Smith was entitled. The fairness of the transaction was not impeached. Indeed, it seems that Mrs. Smith was fully satisfied with the course pursued by McDearman, and had received from him a portion of the money, to which, by the terms of the deed of assignment, she would not have been entitled.

This proceeding in the Probate Court by Smith and wife (for the use of the wife) for her legacy, cannot be distinguished in principle from a suit by the same parties in the Circuit Court for the same purpose. There cannot be any doubt as to the right of the executor, in such a suit for the legacy, to interpose as a defence a payment to the *cestui que trust* or her agent, and a receipt in full for the amount. The right of the *cestui que*

*trust* to assign or dispose of her interest being established, the right to give a release or discharge necessarily follows. Then, whether the demand be prosecuted at law or in equity, if prosecuted for the use of the *cestui que trust*, her receipt or that of her agent or assignee can be interposed in bar of the action. It is no more in principle, than if Smith and wife (use of the wife) had brought suit on a note made to the wife before the marriage, and after the act of 1848, and a receipt for payment in full from Mrs. Smith had been offered in defence.

The judgment of the court below must be reversed; and as all the facts appear of record which are important to a final disposition of the case, a decree must be here rendered in favor of the executor, as having fully paid and discharged the legacy or share of Mrs. Smith.