DOLLNER, POTTER & CO., PLAINTIFFS AND APPELLANTS, VS. FRANCES SNOW ET ALS., DEFENDANTS AND RESPONDENTS.

1. The wife's *separate estate* is an equitable estate where the legal title is vested in some other person for her benefit, and the trustee is a necessary party to a suit seeking to charge such estate.

2. In such case the complaint must set up the nature of the trust, and show that such a charge is consistent with and conformable to the law of the trust as disclosed by the deed or settlement which created it.

3. Neither the Constitution nor the Laws of this State restrict the power of the wife to become the beneficial object of such a grant. Her power to acquire such separate estate is in no way restricted.

4. At common law, the promissory note of a married woman is void. The Constitution and Statute of this State make no change in this respect. Neither at law nor in equity can she bind herself so as to authorize a personal judgment against her.

5. There are material differences between the equitable "separate estate" of the wife and the "statutory separate property" of the wife. A complaint or bill seeking to change either should disclose which class of property is sought to be affected.

Appeal from the Circuit Court for St. Johns county.

This is an action brought under the Code of Procedure. There was an answer setting up several distinct defences to the original complaint, and the plaintiffs demurred to each defence, on the ground that it did not state facts sufficient to constitute a defence to the complaint. The Circuit Court sustained some of the demurrers and overruled others, and held, that as the complaint was defective and demurrers reached back to it, it must be amended. The plaintiffs then filed an amended complaint alleging—

1. That the defendant, Frances Snow, is a married woman, and the wife of the defendant, Henry M. Snow.

2. That the defendant, Jennie P. Spear, is a married woman, and the wife of the defendant, Charles Spear.

3. That the defendant, Frances Snow, on the third day

of August, 1869, at St. Augustine, Florida, made her promissory note, in writing, dated that day, whereby, for value received, she promised to pay to the order of one Walter Ginnity the sum of seven hundred dollars, twelve months after date, with interest, and then and there delivered the same to the said Walter Ginnity.

4. That at the time of the making of the said note, the defendant, Jennie P. Spear, endorsed the same as security thereon, and guaranteed the payment of the same.

5. That afterwards, and before the said note became due, the said Walter Ginnity endorsed, transferred, and assigned the same to the plaintiffs, who are now the lawful holders and owners thereof.

6. That the consideration for which the said note was given was property purchased and held by the said Frances Snow and Jennie P. Spear, as their separate estate.

7. That no part of the said note has been paid, wherefore plaintiffs demand judgment against the defendants, Frances Snow and Jennie P. Spear, for the sum of seven hundred dollars, with interest thereon from the third day of August, 1869, besides the costs of this action, and that the same be levied and collected out of their, or either of their, separate estate.

To this complaint the defendants, Frances and Henry Snow and Jennie P. Spear, demurred, on the ground that the complaint did not state facts sufficient to constitute a cause of action. The Circuit Court sustained the demurrer, and judgment was entered dismissing the action, and from this judgment the plaintiffs appealed.

*Fleming & Daniel* for Appellants.

The point made by the defendants on the demurrer and sustained by the court below was, that the note in question, being made by a married woman, and the maker not stating therein what particular separate property she proposed to

bind thereby, or to be responsible therefor, the same is void. In other words, that a married woman in this State cannot make a valid promissory note, except it is expressed therein that certain separate property of such married woman is intended to be bound thereby.

The act of March 6, 1845, known as the "Married Woman's act," (Thomp. Dig., 221–2,) provides that, "hereafter, when any female, a citizen of this State, shall marry, or when any female shall marry a citizen of this State, the female being seized or possessed of real or personal property, her title to the same shall continue separate, independent, and beyond the control of her husband, notwithstanding her coverture, and shall not be taken in execution for his debts; provided, however, that the property of the female shall remain in the care and management of her husband." And further, "married women may hereafter become seized or possessed of real and personal property, during coverture, by bequest, demise, gift, purchase or distribution; subject, however, to the restrictions, limitations and provisions contained in the foregoing section."

And the same act provides further, that "all property, real and personal, which shall belong to the wife at the time of her marriage, or which she may acquire in any of the modes hereinbefore mentioned, shall be inventoried and recorded in the Circuit Court clerk's office of the county in which such property is situated, within six months after such marriage, or after said property shall be acquired by her, at the peril of becoming liable for her husband's debts, as if this act had not been passed; provided, that any omission to make said inventory and record shall in no case confer any rights upon her husband."

The married woman acquiring property by any of the means in the act above cited, except by distribution, takes by purchase, *i. e.* by her own act and agreement, (see Blackstone's Com., marg. p. 241,) and she is a necessary party to

the agreement or contract by which the title to the property is vested in her; therefore a contractor.

By the common law the wife could not acquire property, but to compensate for this disability, neither could she be held liable on contract. Upon marriage, her legal existence became entirely merged in her husband.

Under our statute, however, the wife not only holds her property, real and personal, of which she is seized and possessed at the time of marriage, "separate, independent, and beyond the control of her husband, notwithstanding her coverture," but she can acquire property by any of the means above stated, that is, by purchase, which is held by her in the same manner. She is a purchaser, and her title to the property separate, independent, and beyond the control of her husband; the husband having simply the care and management of the property. Thus the laws of our State recognize the separate existence of the wife as to acquiring and holding property.

Mr. Smith, in his work on Contracts, (4 Am. Ed., 317–18,) says: "It is a general rule that a married woman cannot bind herself by any contract made during coverture, not as in the case of an infant from any presumption of incapacity, but because she has no separate existence; her husband and she, being in contemplation of law, but one person."

And see also Chitty on Contracts, (10 Am. Ed., 194): "A married woman has, in general, no power or capacity to contract, so as to sue, or be sued, either with or without her husband, on her contract made during coverture, for she has in legal contemplation no separate existence, her husband and herself being in law but one person; and she is unprovided with the means of satisfying her engagements, her husband being entitled to her rights, and to any property she may acquire, even while living apart from him in a state of adultery. Her incapacity rests upon these principles, not upon the notion that she is under the control of her hus-

band during the coverture, and cannot, on that account, assent."

The common law basis the wife's incapacity to contract on the ground that she cannot hold property out of which her engagements may be satisfied, and because she has no separate existence apart from her husband.

Now, as our statute recognizes the separate existence of the wife in acquiring and holding property during coverture, and it is provided by the Code of Procedure, (under which this action is brought,) Sec. 220, par. 5: "In an action brought by or against a married woman, judgment may be given against her, as well for costs as for damages, or both for such costs and such damages, *in the same manner as against other persons*, to be levied and collected out of her separate estate, and not otherwise."

The right of the wife to purchase and hold property carries with it, in our opinion, the corresponding liability for the purchase-money or price of the thing purchased; and it will be borne in mind that the amended complaint sets up that the consideration for which the note, the subject of this action, was given, was property purchased and held by the said defendants, Frances Snow and Jennie P. Spear.

We cannot think that it was the intention of the framers of this law to offer a premium for fraud by permitting a married woman to become a purchaser, and at the same time render invalid her contract for the payment of the purchase-money, because she does not designate therein some particular separate property to be bound thereby.

The provision of the Code above cited is general, that the judgment against a married woman "be collected of her separate estate," and does not limit it to any particular separate estate which may be mentioned in the subject of the action against her. Nor is there anything in the married woman's act which would seem to imply that the Legislature intended to limit the wife's liability on her contract for

the purchase-money of her separate property to any particular property, or to render invalid her contract even as against the very property purchased, unless the same is specified in her written obligation.

*Mr. J. B. Stickney* for Respondents.

MR. JUSTICE WESTCOTT delivered the opinion of the court.

The basis of this action is the following promissory note:

"$700.00.    ST. AUGUSTINE, August 3, 1869.

Twelve months after date I promise to pay to the order of Walter Ginnity seven hundred dollars, with interest, value received.    FRANCES SNOW."

This note is endorsed:

"JENNIE P. SPEAR.

WALTER GINNITY."

This action is brought by Dollner, Potter & Co., the endorsees of Walter Ginnity, against Frances Snow as the maker of said note, and her husband Henry M. Snow, and against Jennie P. Spear, the plaintiffs alleging that she " endorsed the note at the time it was made as security thereon and guaranteed the payment of the same." Her husband is also a party. The plaintiffs allege that the consideration for which said note was given was property purchased and held by the two married women as their " separate estate." The plaintiffs pray judgment for principal and interest of said note against defendants, Frances Snow and Jennie P. Spear, " and that the same be levied and collected out of their or either of their separate estates." To this complaint the defendants, the married women, demur, the ground of the demurrer being " that the complaint does not state facts sufficient to constitute a cause of action."

This demurrer is sustained. There is judgment dismiss-

ing the complaint, and from this judgment this appeal is prosecuted.

The general question, therefore, presented by the pleadings is the sufficiency of the complaint. The decision of the question thus presented involves, to a limited extent, a consideration of the general subject of the rights and powers of married women under our constitution and statutes. This complaint is defective in that it fails to set up the character of the separate estate sought to be bound by the judgment. Both before and since the statute, there could be separate estate of the wife which, beyond question, could not be made subject to the promissory note of the wife. It is true that as to her separate estate the wife is considered in equity, for most purposes, as a *feme sole*, whether such estate was acquired before or since the statute ; yet the common and necessary doctrine both in England and the United States is, that she is so only so far as the deed creating the estate makes her so. Any act against the terms of the instrument creating the estate by which the wife even consents to a charge, would be ineffectual for want of power to create a charge. Neither the constitution nor the statute prohibits the wife from acquiring, since their enactment, such a separate estate as was recognized and known before their existence. They did not in this respect restrict her power to become the beneficial subject of a settlement or grant made with such restrictions, powers and trusts, conformable to law, as the grantor might deem proper. If under such instrument the property was to remain in the care and management of her trustee, and she was to have the use of the rents, issues and profits thereof, the statute did not have the effect to transfer this management and the right to the profits to the husband. Now, this separate estate, which we see was authorized before as well as since the statute, was a creature of a court of equity to protect the wife against the marital rights of the husband.

It was an equitable estate.    The legal title was in a trustee for the benefit of the wife.    4 Penn. State, 429 ; 4 Conn., 10. The law as to such separate estate, so far as it can be applicable to or arises out of this case, and beyond that point we do not go, is that the amount of the wife's promissory note, given for property purchased to be her separate estate, and for the direct benefit of such estate, is in equity a charge upon her separate estate, if such charge is consistent with the restrictions imposed by the donor or grantor as part of the terms of the gift or grant.    As to such estates as we are now treating, this is the rule, whether the estate was created before or since the statute.    In suits seeking to subject separate estate of this character, as remarked by Judge Comstock in Yale vs. Dederer et ux., 18 N. Y., 268, the trustee having the title is " an indispensable party."    The trustee not being before the court, we cannot see how such separate estate can be affected or charged with this debt. 3 Ves., 443 ; note to 2 Story's Eq., 11 Edition, §1396.

Again, in order to make out a charge against such separate estate, the complaint must necessarily set forth the deed or instrument creating the trust, or the nature and incidents of the trust estate, as upon its terms depends the power to create the charge.    It is thus clear that this complaint fails to state facts sufficient to make this amount a charge against such separate estate, and that an indispensable party defendant is omitted to be made.    Again, these plaintiffs fail to allege the present existence of any separate estate, and yet pray a judgment for a sum to be satisfied out of it.   31 Ala., 443 ; 26 Ala., 337 ; Voor. Code, 187, and cases cited.

What has been said is upon the hypothesis that the estate here sought to be bound is what is strictly known as the equitable, separate estate of the wife.    Now the property which the wife may acquire is necessarily limited to two kinds, viz.: that in which she has an equitable title, and that in which she has the legal title and of which she is the

owner. What is before said covers and embraces all that
property in which she may have an equitable title only, and
that strictly and properly is her " separate estate," the estate
which the plaintiffs here seek to charge. We might here
cease the treatment of this question and dispose of the case
upon the grounds before stated, but it is not deemed im-
proper to briefly allude to the constitutional provisions as
well as the statute upon this subject. The property which
the wife acquires under the constitution (other than separate
estate as before described,) and to which she has the legal ti-
tle and of which she is owner, is called by the constitution
her " *separate property*." The constitution did not propose,
however, to divest the wife of a right to acquire a strictly
separate estate, nor did the statute before the constitution
render it impossible for the wife to acquire a separate estate,
except upon the condition that it was to remain in the care
of the husband, he to have the right to the hire and issues
thereof. The purpose of the whole law is to give to the
wife additional rights, not to destroy those before existing.
She could take just such equitable interests as the deed gave,
no more, no less. The statute regulated and controlled
property in which title was in the wife at the time of
marriage. It provided that *her title* should continue, separ-
ate, independent and beyond the control of her husband,
not to be taken in execution for his debts notwithstanding
her coverture, but the property was to remain in the care of
her husband, and the wife was not permitted to sue him for
the rents, hires or issues of property to which she had sep-
arate and independent title under the act. This must be
restricted in its application to such property only as would,
by virtue of the marital rights of the husband, have other-
wise passed to him, or to his care and management—that is
such property as to which the husband, by virtue of mar-
riage, became entitled to ownership or control. The statute
further provided, " that married women may hereafter be-

come seized and possessed of real and personal property during coverture by bequest, demise, gift, purchase or distribution," not to be subject to the debts of the husband, but to remain in his care and management without liability to account. It also provided that the husband and wife should join in all sales, transfers or conveyances of the property of the wife, and that the real estate of the wife should only be conveyed by the joint deed of the husband and wife, according to the laws of Florida regulating conveyances of real property. The question whether the property of the wife, of which she was the owner at the time of her marriage, or acquired subsequently under the constitution and law, and which she owned and still owns, is subject in equity to be charged for her promissory, note has not been presented by counsel. An interesting question in connection with this subject is, what effect the restriction as to the transfer of the property of the wife, its management, and the right to the rents and profits thereof in the husband, has upon the general equitable doctrine applicable strictly to her equitable separate estate, in its application to her statutory separate property. Another interesting question is, whether the constitution repeals any part of the statute, and if so, the extent of the repeal and its effect upon the power of the wife to charge her "statutory separate property." The position taken by counsel in this case, if we understand them, is, that the wife having been given power to acquire property by purchase, carries with it a corresponding liability on her part for the purchase money ; and that her contract (in this instance her promise to pay) is binding upon her. The constitution and statute do not enable the wife to bind her person, either at law or in equity, by contract, or subject her to be sued at law. 18 New York, 265 ; 37 N. Y., 35 ; 11 Casey, 385 ; 12 Harris, 80 ; 16 Ohio, 480 ; 39 Barb., 194 ; 46 Mo., 532 ; 23 Ala., 639 ; 22 Barb., 371 ; 9 Kan., 80 ; 8 C. E. Green, 526 ; 31 Ind., 233 ; 35 Ind., 353 ;

26 Texas, 685; 1 Green, 97–105; 6 ibid., 269–282; 13 Wis., 125 ; 15 Wis., 365–380. · The power given to the wife in most of these States, the decisions of whose Courts are ·cited, is beyond that conferred in this State.   The statute of Maine, like that of Florida, gives the wife power to acquire real estate by purchase, and we cite with approbation the language of its courts upon this particular subject :

"It is contended that inasmuch as the statute authorizes married women to become seized and possessed of real estate by purchase, it must by necessary implication authorize such women to enter into contracts ·of bargain and sale, and must also carry with it all the rights usually exercised by those making such contracts, including the right to make and execute promissory·notes in payment of estate thus purchased.   Such a construction would manifestly extend these statutory provisions much beyond the limits contemplated by the Legislature, and would overturn well-established rules .of law defining the rights of married women.   Purchase, in its most enlarged and technical sense, signifies the lawful .acquisition of real estate by any means whatever, except by descent.   There are six ways of acquiring title by purchase : 1, by deed; 2, by devise ; 3, by execution; 4, by prescrip-tion ;   5,  by possession or  occupancy ;   6,  by escheat. It therefore by no means follows that because the statute authorizes a married woman to hold real estate by purchase, that she must be authorized to pay the consideration by her promissory notes.   The intention of the Legislature appears to have been to annul that rule of the common law by which the husband by marriage became the owner of the personal property of the wife, and entitled to receive the income of her real estate, and to protect her property by declaring it to be exempt from any liability for the debts and ·contracts of the husband.   There does not appear to have been any language used in the act with a design to remove :the disabilities imposed by the common law upon a *feme co-*

*vert*, and to enable her, contrary to its rules, to make sales and purchases of property. The notes referred to were, therefore, given by a person having no power to bind herself by such contracts, and are consequently void." 34 Maine, 572; 5 Wis., 245; 9 ib., 524; 9 Foster, 77; 15 N. Y., 575.

What is here said as to the purpose of the Legislature in the matter of the income of the real estate of the wife is not, as a matter of course, applicable to our statute, as in this respect our Legislature has expressed a different intention. What is said as to the power of a married woman to act as a *feme sole* in the matter of binding herself at law for her promissory note, is, however, correct beyond question.

The conclusion we reach, upon principle and authority, is that the wife's promissory note is not effective to bind her person either at law or in equity, and that neither the Constitution nor the statute give her to this extent the power of a *feme sole.* Whether her " separate property," under the Constitution and statute, or what is called by the books her " separate statutory property," can be charged with the amount of such note when given for a purchase of property to be her separate statutory property, is a question of too much importance to be determined, except after thorough argument, and in a case where the pleadings properly present that question. The allegation that the note was given for property purchased and held as separate estate, does not set up the present existence of a separate estate. In this case the existence of a " separate estate," or a " separate statutory property," is not averred. The complaint fails to make a case where a judgment can be rendered against either, as neither is alleged to exist. It will be seen, by consulting the cases (cited in note *d* to section 142, New York Code by Voorhees, page 187, and Wait's Code, 217,) upon the subject of the sufficiency of a complaint in a case of this character in New York, that this view is fully sustained by them. Indeed, they go much further than there is any

7

necessity for us to go in disposing of this case. These requisites, as to the sufficiency of the complaint in such a case, are not obviated by the provisions of the Code regulating the practice as to the manner of entering judgments against *femes covert*. The same provision is in the New York Code. This section of the Code (220) simply provides that where a judgment can properly be entered against a married woman, that as to the costs and damages recovered, the manner of entering the same in the judgment shall be the same as in other cases. It then provides that this judgment so entered shall be levied and collected of her separate estate. This section itself prohibits a general judgment at law against the wife, and restricts its operation to this property. As to the precise manner in which such judgments are satisfied we do not think it proper to state, as this question is not presented by this case. The judgment herein is final, sustaining the demurrer and dismissing the complaint. Generally the proper order to be made herein, under the circumstances, would be to sustain the judgment without prejudice to the parties filing a bill in equity under the new practice. As, however, there would arise some questions as to the limitation of the action, the proper order, we think, is to affirm the judgment in so far as it sustains the demurrer, and to reverse it in so far as it directs the complaint to be dismissed, and to remand the case, with directions to permit the plaintiffs to amend upon payment of all costs in the Circuit and Supreme Courts, including the cost of such motion.

The judgment is reversed in so far as it directs the complaint to be dismissed, and the case will be remanded with directions to permit such amendments as are proper upon the payment of all costs, and there will be judgment in this court against appellants for all costs by respondents expended in this behalf.