NORMAN B. HARWOOD ET UX., APPELLANTS, VS. WILLIAM ROOT ET UX., APPELLEES.

1. In the premises of a deed to a married woman the words of transfer are, "grant, bargain, sell, alien, convey and confirm unto the said party of the second part, her heirs and assigns," and the words in the *habendum* and *tenendum* clause of the deed are "to have and to hold the aforesaid bargained premises, together with all and singular the rights, tenements, hereditaments and appurtenances to the same belonging, unto the said party of the second part, her heirs and assigns, to her and their own sole and proper use, benefit and behoof in fee simple": *Held*, That no

equitable separate estate passes, and that the wife holds the property as her separate statutory property.

2. A married woman purchases property. She and her husband join in the execution of a promissory note for the purchase money. That the husband is insolvent is known to the vendor, and the credit is given, looking to the separate statutory property of the wife: *Held,* That a court of equity will sequester the rents and profits of the separate statutory property of the wife to secure payment of the debt.

Appeal from the Circuit Court for Duval county.

The facts of the case are stated in the opinion.

*John E. Hartridge* for Appellant.

The intervention of a trustee is not necessary to create an estate for the separate use of a married woman. Perry on Trusts, Vol. 2, §647, and authorities there cited; Hamilton vs. Bishop, 8th Yerger, 33, (29. Am. Dec., 101.)

Though the authorities are conflicting as to what words are sufficient to create a separate use in a married woman all agree that it is immaterial what form of phrases is used in the conveyance. Technical language is not necessary ; all that is required is that the intention of the gift should appear manifestly to be for the wife's separate enjoyment, and this intention is to be gathered from the instrument and by a consideration of the facts and circumstances surrounding the grantor and grantee. Clancy's Husband and Wife, 262 ; Hamilton vs. Bishop, 8 Yerger, 33 ; Smith vs. Wells, 7 Metcalf, 240, (39 Am. Dec., 772) ; Smith vs. Henry, 35 Miss., 377.

If the grantors in these deeds intended Mrs. Root to take a "statutory separate property" in the land conveyed it was only necessary for them to pay in the tenendum clause. "To have and to hold to her and her heirs forever," and the words " own, sole and proper use, benefit and behoof " in

one deed, and the words " own proper use, benefit and behoof forever " in the other, are the merest surplusage. The parties to the deeds and the conveyancer who wrote them knew the law.

These words and words of like import have been repeatedly held to create in a married woman an estate independent of her husband. Adamson vs. Armatage, 19 Ves., 416; Davis vs. Prout, 7 Beav., 288 ; Jamison vs. Brady, 6 Serg. and R., 466, (9 Am. Dec., 460 ;) Snyder vs. Snyder, 10 Pa. St., 423 ; Jarvis vs. Prentice, 19 Conn., 272 ; Goodrum vs. Goodrum, 8 Ired. Eq., 313 ; Tyler vs. Lake, 2 Russ and My., 188 ; Smith vs. Wells, 7 Metcalf, 240, (39 Am. Dec., 772;) Bishop on the Law of Married Women, Vol. 1, §828; Perry on Trusts, Vol. 2, §648.

The words " for her sole and separate use " are everywhere held to be effectual to create in a married woman an estate independent of her husband. Perry on Trusts, Vol. 2, 648.

In Tyler vs. Lake, above cited, Lord Chancellor Brougham said that " the word ' proper ' is the Latin form of ' own,' and can mean nothing more." Keeping this meaning of the word " proper " in view, and the only purpose it can fill in the deed in question is to convey the idea that the property granted was to be held for the *exclusive* use of Mrs. Root, and hence its effect is precisely the same as if the word " separate " had been written in its place.

If it had been intended to grant the property to be held subject to the marital rights of the husband the words used were unnecessary and improper. But the insertion of these words is tantamount to saying " for her use and not for the use of her husband."

If Mrs. Root holds the lands conveyed by these deeds, or either of them, as her sole and separate property then the

lot or lots so held by her are liable for this debt and can be subjected in a court of equity.

The bill alleges that Root was known to complainants to be insolvent and that the credit was given to Mrs. Root upon the faith of this property.

*Feme covert* acting with respect to her separate property is competent to act in all respects as if she were *sole*. Clancy's Husband and Wife, 282, 331, *et seq.* ; Perry on Trusts, Vol. 2, §657, *et seq.*

The creation of the debt is *prima facie* evidence of an intention to charge the estate. Bishop on the Law of Married Women, Vol. 1, §§854, 878, 1879 ; Story's Equity, §1400, *et seq.;* Blummer *et ux.* vs. Pollack & Co., 18 Fla., 707.

The right of a creditor in such a case as is made by appellant's bill to subject the separate estate or property of a married woman to the satisfaction of his debt, whether secured by mortgage or not, has been recognized by this court repeatedly. Adms. of Smith vs. Poythers, 2d Fla., 92 ; Merritt vs. Jenkins, 17 Fla., 593 ; Mattair vs. Card, 18 Fla., 766 ; 18 Fla., 718 ; Id., 809; Thrasher vs. Doig and Geiger, 18 Fla., 821.

The indebtedness in this case having been contracted for the benefit of Mrs. Root's estate, and to enable her to use it, appellants maintain that the property described in the exhibits to the bill is liable for their claim whether Mrs. Root holds it as her separate estate under the deeds or as her "separate statutory property." This we understand to be the decision of this court. Stanley vs. Hamilton, *et ux.*, 19 Fla., 275.

*Wm. B. Young* on same side.

Under the laws of Florida the use and benefit of the " separate statutory property " of the wife is vested in the

husband. He takes the rents, incomes and profits, and he is accountable to no one therefor. McClellan's Digest, p. 755, §5.

"The donor of the estate, if he offends no law, may impose whatever limitations, or impart whatever qualities or incidents he chooses to the estate he may create." Short vs. Battle, 52 Ala., 456.

The donor of the property, described in Exhibit A of the bill, directs that it shall be held to the "own, sole and proper use, benefit and behoof" of Mrs. Root. How can she have the "sole and proper use, benefit and behoof" of this property if her husband's marital rights under the statute are to attach to it? To hold that the property conveyed by this deed is the separate statutory property of Mrs. R. is to defeat the plain purpose of the donor as expressed in the deed. The husband and not the wife has the sole use of the separate statutory property. See the following additional authorities as to the sufficiency of the words used in the deeds to Mrs. R. to create an equitable separate estate : Short vs. Battle, 52 Ala., 456 ; Hooks vs. Brown, 62 Ala., 258 ; Newman vs. James & Newman, 12 Ala., 29 ; Brown vs. Johnson, 17 Ala., 232; Cuthbert vs. Wolfe, 19 Ala., 373 ; Gould vs. Hill, 18 Ala., 84 ; Ozley et al. vs. Ikelheimer, 26 Ala., 332; Williams vs. Avery, 38 Ala., 115 ; Caldwell vs. Pickens' Admr., 39 Ala., 514.

*Jno. T. & Geo. U. Walker* for Appellees.

A question arises upon the face of the note in this case. When the transaction alleged in the bill was had and the note was executed it became *the evidence* of the contract. It is to the evidence of a contract we look to determine what the contract is in law. Married women at the common law could make no contract, and if she gives a promissory note it is void. In the present instance the note de-

scribed results as the note of the husband. And the evidence. of this contract exhibits itself as simply the obligation of William Root. In this view, if the law operating on the fact in evidence makes it *the husband's note*, then we have a bill brought to enforce payment of a husband's note out of the separate property, the real estate, of the wife, and of course it needs no authority or argument to show that such a bill is wanting in equity. If the court takes this view of the note there is an end of the case. Should the court, however, hold that the note is the wife's and a proper subject of litigation in this suit it will be necessary to argue other questions. Upon the admitted state of facts arise the legal questions in the cause. One of those embraces the rest, namely: Can the payee of a note, given as in this case, reach through a court of equity the separate estate of the wife sought in the bill and sell it to pay the note ?

We contend that this question must be answered in the negative. For an exhaustive consideration of the question we refer to Radford *et al.* vs. Carwile *et al.*, decided April 19, 1879, by the Court of Appeals of West Virginia, where it is held :

1. A married woman as to property settled to her separate use is to be regarded as a *feme sole*, and has a right to dispose of all her separate personal estate, and the rents and profits of her real estate accruing during the coverture, as if she were a *feme sole*, unless the power of alienation is restrained by the instrument creating the estate.

2. Such restraint upon the power of alienation will not be implied from her being authorized to dispose of the property in a specified manner. Such restraint must either be expressed or so clearly indicated as to be an equivalent to an express restraint.

3. The *jus disponendi* is an incident to the ownership of a separate estate, and it can only be taken away or limited

by express words, or by an intent so clear as to be the equivalent of express words.

4. The liability of the separate estate of a married woman to the payment of all her debts incurred during coverture is also an incident of the ownership of such separate estate ; and it too can only be taken away by express words, or by an intent so clear as to be the equivalent of express words.

5. But these incidents, liability to the payment of her debts and her *jus disponendi*, extend no farther than to all her separate personal property, and the rents and profits of her separate real estate accruing during the continuance of the coverture.

6. The *corpus* of her separate real estate is in no manner affected by the equitable doctrine of a separate estate, which was devised to prevent the acquisition by the husband of his marital rights to all her personal property and the rents and profits of her real property during the coverture. 13 W. Va., p. 662.

7. The common law effectually protected the *corpus* of her real estate against her husband's control and against his debts. And her common law disability to incur any debt, during her coverture, which will in any manner affect or change the *corpus* of her real estate, whether such real estate be separate property or not, is still in full force. The *corpus* of her real estate can only be affected by the vendor's lien when it has been reserved, or by a conveyance, or specific lien created by deed in which her husband has united with her, and which she executed after privy examination.

8. The debts of a married woman, for which her separate estate is liable, are such as arise out of any transaction out of which a debt would have arisen if she were a *feme sole*, except that her separate estate is not bound by a bond

or covenant based on no consideration, such bond or cove-
nant being void at law, and she not being estopped from
showing in a court of equity that it was based on no con-
sideration.

9. The consideration which will support an action for
her debts or contracts so as to make her separate estate li-
able need not inure to her own benefit, or that of her sepa-
rate estate, but it may inure to the benefit of her husband,
or any third party, or may be a mere prejudice to the other
contracting party; in short, it may be any consideration
which would support the contract if she were a *feme sole.*

10. But her separate estate cannot be made liable for the
payment of any debt of her husband or of any other per-
son unless she has agreed to pay the same by some contract
in writing signed by her or by some one authorized by her.
Radford *et al.*, vs. Carwile *et al.*, 13 W. Va., 682. Of course
the principles stated in nine and ten are held with reference
to what is said in five and six, *supra.*   13 W. Va., 683.

In this case the court has also construed their legisla-
tion on the subject as contained in the code of W. Va., 3d
section of chapter 66, and in construing our own legislation
as to the property of the wife much light is shed by this
comparison.

The statutes of Florida on this subject which are to be
read in the light of the common law and equity jurispru-
dence as it existed July 4, 1776, were enacted in the years
1824, 1835, 1845, 1881, and in the Constitution of 1868.

The Constitution provided that as to all property real
and personal owned by the wife before her marriage, or af-
terwards acquired by gift, devise, descent, or purchase, shall
be her separate property and not liable for the debts of her
husband.   Sec. 26, Art. 4, Const. 1868.   In the statute of
1845 the methods of acquiring such separate property were
" by bequest, devise, gift, purchase, or distribution."   Act

March 6, 1845. It will be seen that the Constitution of 1868 embraced all methods named in this act, except bequest and distribution.

As to her real estate of inheritance, she can convey or mortgage it, her husband joining in the conveyance, and the statute as to privy acknowledgement be complied with Act February 4, 1835. Her realty can only be conveyed by joint deed of herself and husband duly attested, authenticated and admitted to record. Act March 6, 1845. The act of 1881 enables her to dispose of her property by will as if she were a *feme sole*. Chap. 3249, Act February 11, 1881.

The first, second and third sections of chapter 66, Code of W. Va., which are quoted in the case of Radford *et al.* vs. Carwile *et al.*, cited *supra*, at pages 659, 660, will be found on comparison to contain very nearly the same provisions as our Constitution, 1868, Art. 4, §26 ; Act Feb. 4, 1835, and March 6, 1845, and February 11, 1881.

In that case the Supreme Court of W. Va., say : " The above rules," referring to those we have quoted, numbered from 1 to 10, inclusive, " will apply to a separate estate of a married woman held under the third section of chapter 66, Code of W. Va., except : 1. She holds the legal instead of the mere equitable title to such separate property. 2. She can devise such real estate. 3. If living separate and apart from her husband she may sell and convey her real estate without her husband joining in the deed or contract of sale, and it is liable for all her debts contracted while she was so living apart from her husband."

" A separate estate under this 3d section of chapter 66 of our Code is created simply by a conveyance of land to her though it is not conveyed for her sole and separate use." 13 W. Va., 683-4.

If this construction be correct it may safely be said that

under the Constitution and statutes of Florida, holding the property mentioned in this bill by the language of the deeds from Holmes and Reed, that Mrs. Root " holds the legal instead of the mere equitable title " thereto. If so, and we have no statute enabling her to make contracts in relation to it, and making such contracts personally binding upon her *at law*, no statutory action which may be pursued against her in the ordinary legal remedy which ends in a recovery, judgment, and consequent execution—if no such enactments exist in Florida, then the equitable jurisdiction remains. But the arm of equity is too short to reach and subject, as is sought by this bill in this cause, *the corpus of her real estate* to pay the note to Mrs. Harwood.

Our contention is mainly based upon that broad doctrine which has, we respectfully submit, never been invaded or narrowed by the courts in the better considered opinions in which the question has been decided, and which is contained in the following propositions:

1st. While the wife is living with her husband she cannot charge or bind her separate property or estate in a case where the engagement she makes does not create an indebtedness for the benefit of her separate estate or property, except by *deed, mortgage or other instrument duly executed and acknowledged according* to the statute.

2d. Living with her husband she can make no debt which will charge or bind her separate property or estate unless from the fact that the debt is of *such a character* and entered into for *such things* as being for the *benefit* of said estate or property, it must necessarily be implied that she *intended* that payment should be made out of her said property or estate. The only hope that complainants can entertain to recover lies in so construing the note in this case as to cover it by the exception in the second proposition.

Common Law: Passing the consideration of that condition of the wife at common law, where she has no separate existence, is unable to contract, enjoying, except in few instances, no property apart from her husband, we will lay down what, as we understand, is her status in equity.

Equity: From an early day courts of equity prior to any legislation recognized the separate estate of a married woman and created by *trust* for her rights and int erests in property, real and personal, independent of her husband. Hence in these courts she had the power to enjoy, contract, and alienate. That is, as to such trust estate, she was regarded as a *feme sole.* But it must be remembered this status, this being as if she were unmarried, is not absolute. The principle of equitable trust investing her estate, or the instrument which conveys it to her separate use, except as to the common law rights of her husband, may restrict it.

Statutory legal separate estate: But there is another kind of separate estate in married women called the statutory legal separate estate. This is where a legal title is vested in the wife by legislation. The statutes which invest, the wife with the legal title exclude the common law rights of the husband. Still, except in a few States, no attempt has been made to remove the enforcement of her engagements from the courts of equity. No such effort has been made in Florida.

In this State a married woman may acquire two kinds of separate estate. In one she gets the legal title, in the other, has the equitable title. Dollner, Potter & Co. vs. Snow, 16 Fla., 92.

The language of the deeds to Mrs. Root, to her heirs and assigns, to her and their own sole and proper use, benefit and behoof in fee simple, and " to her heirs and assigns to her own use, benefit and behoof forever."

If these instruments create a *trust* estate, one in which—

conceding it is not essential to name a trustee to hold for her separate use—the legal and equitable titles are separated, we contend the bill is without equity.

If the words in the deeds to Mrs. Root created a statutory separate estate under the (law) statutes of this State the equitable rule cannot apply. 19 Fla., 296.

That these deeds did create a separate statutory estate, see Lippincott vs. Mitchell, 4 Otto, 767.

But treating Mrs. Root's estate under the deeds as an equitable estate, for the sake of the argument grant that in this State the English rule which makes liable in equity the wife's separate estate for all those engagements which being made with reference to it are *intended* to be based on its faith and credit *is the law*, then is the contract *evidenced* by this *note constituted* as claimed by the bill in this cause, and as admitted by the demurrer, of *that class* for which her separate property or estate is, under this doctrine, liable? Let us, since we are now looking upon the estate held by the defendant under the deeds to her as an equitable separate estate, take the strongest view which can be assumed for the complainants and deduce the answer to that question. We will say that, although it does not appear from the note sued on that Mrs. Root *intended* dealing with complainants on the faith and credit of her separate estate, yet it is not essential that it should, if it can be gathered from the nature or form of the contract that it was made with an intention to and did bind, and did confer benefit upon her separate estate, this will be enough. Then if it can be collected from this note, made in the circumstances out of which it grew, that Mrs. Root gave it in reference to a benefit to her separate estate, and with the intention to so benefit her property, it is liable, and complainants ought to recover. Mark well, if the court please, this deduction depends upon the question: *Did she buy the furniture for the*

*benefit of her separate estate?* It would be idle to argue to this court that she could not have had in her mind any such notion, that the purchase and acquisition of a set or dozen sets of furniture however valuable would benefit her separate estate. We would be obliged to the solicitors of complainants if they can define to us the *benefit* which would flow to Mrs. Root's property mentioned in their bill from the purchase of the furniture which formerly belonged to Mrs. Harwood. That she gave a promissory note in order to get some furniture highly valuable and costly forsooth to the end that her property might appreciate in value seems the height of absurdity. What part of her separate estate in all the property conveyed to her in those deeds was to be benefited or was benefited by placing the furniture in her house? Did it when put into the house at once descend into the land on which it stands and so instantly become a part of and fixed to the freehold? What purchaser would be likely to make it a condition of his bargain and sale of that home that he found the aforesaid furniture there? Did it add to the Bay street property by some magical influence some dollars, nay, a single dollar's worth?

An examination of the decisions of this court upon this subject will show, we confidently submit, that the contract, if such it may be called, by Mrs. Root was not such as that her separate property or estate is liable, conceding that there is no necessity to express the intention to bind the separate estate of the wife in engagements made by her.

We refer to and cite Admr. of Smith vs. Poythers, 2 Fla., 92; Lewis vs. Gale, 4 Fla., 418; Maiben vs. Bobe, 6 Fla., 331; Sanderson vs. Jones, Id., 430; Tison vs. Mattair, 8 Fla., 107; Mattair vs. Card, 18 Fla., 761.

The enforcement of the engagement by her must be exclusively according to equity, if at all. To this point we

believe we have sufficiently addressed our argument, and in conclusion, in support of the propositions we contended for in the outset, we refer to the opinion of the present Supreme Court, speaking by its Chief-Justice, in the decision in the latest case on the subject. We cite Staley vs. Hamilton, 19 Fla., p. 275.

MR. JUSTICE WESTCOTT delivered the opinion of the court.

This case arises upon a demurrer to a bill filed by appellants against respondents seeking to subject the property of Emma C. Root to the payment of a debt due by her to Susan D. Harwood for goods purchased of her.

The material portions of the bill are brief and may be here inserted.

Plaintiffs allege first, "that on the 11th day of February, A. D. 1882, your orators sold and delivered to the defendant, Emma C. Root, with the approval and consent of her husband, the said William Root, a lot of household furniture to be used by the said Emma in her home, and is now in her said home and her said use, in the house erected as the property described in Exhibit A hereto attached, and the said furniture was suitable to the condition in life and estate of the said Emma.

2. "That upon the delivery of said furniture to the said Emma, she and her said husband executed and delivered to the complainant, Susan D. Harwood, their promissory note for the sum of fourteen hundred and twenty dollars, payable one year after date, with interest at ten per cent. until paid, for the purchase money of said furniture, and said furniture was reasonably worth said sum.

3. "That at the time of the sale of the said furniture to the said Emma, it was the separate property of the complainant, Susan D. Harwood.

4. "That at the time of said sale of said furniture and the taking of said note the said Emma was seised and possessed of the following described property." Then follows a description of the property. [Real estate in the city of Jacksonville.—Rep.]

5. "That your orators knew at the time said credit was given that the said Emma was seised and possessed of said property, and they were induced to give credit to her and part with their said property by reason of the said Emma's ownership of said valuable property and their confidence in her ability and willingness to pay them as she agreed to do.

6. "That at the time said credit was given the said William Root was insolvent, which was well known to your orators, and his insolvency continues down to the date of the filing of this bill, and that the said Emma and her family are in the use and enjoyment of the property purchased by her."

In the premises of one of the deeds under which the property sought to be subjected here was acquired by Mrs. Root, the words of transfer to the grantee are "grant, bargain, sell, alien, convey and confirm unto the said party of the second part, her heirs and assigns," the *habendum* and *tenendum* clause of the deed being "to have and to hold the aforesaid bargained premises together with all and singular the rights, members, tenements, hereditaments and appurtenances to the same belonging unto the said party of the second part, her heirs and assigns, to her and their own sole and proper use, benefit and behoof in fee simple.

In the other deed covering the property sought to be subjected the words of transfer in the premises are have granted, bargained, sold, aliened, remised, released, conveyed and confirmed, and by these presents do grant, bargain, sell, alien, remise, release, convey and confirm unto the said party of

the second part and her heirs and assigns forever, the *haben-dum* clause being "to have and to hold the above granted, bargained and described premises with the appurtenances unto the said party of the second part her heirs and assigns to her own proper use, benefit and behoof forever."·

Plaintiffs prayed that a sale might be had of so much of the property described in the bill as was necessary to pay the debt and costs of suit and for alternative relief.

Defendants' demurrer to this bill was sustained and plaintiffs appeal, assigning this action of the court as the ground of reversal.

There were two general questions involved in the disposition of this demurrer.

First. Whether this property is the separate estate or the separate statutory property of Mrs. Root.

Second. Whichever it may be, is the debt, described in the bill, in any way a charge upon this property, and if so, in what way is such charge to be satisfied.

To the first question: It is to be noticed here that there is no trustee named in the deed in whom is the legal title, the beneficial interest being in the wife. This is not essential to the preservation of the rights of the wife against the marital rights of the husband if the intent of the donor or grantor to create a separate estate clearly appears.

The rule in determining whether an estate granted in a deed of this character here to the wife, that is, a deed directly to the wife without any intervening or subsequent estate, a simple deed in fee, is her separate estate or separate statutory property, is that "where the intent to exclude the marital rights of the husband is doubtful or equivocal, or rests on speculation, the statute intervenes and fixes the character of the estate as the separate statutory estate of the wife." Short vs. Battle, 52 Ala., 456.

Under our present system there is no such thing as an es-

tate in land in a *feme covert*, subject, as at common law, to the marital rights of the husband, except so far as the statutory rights of the husband correspond with his common law rights, unless the terms and conditions of the deed under which a separate estate is limited to the wife correspond with the common law marital rights of the husband and then the common law rights of the husband attach, not by virtue of his common law rights, but by and under the terms of the deed conveying the estate. If the estate is granted to the wife generally and not strictly as separate estate it becomes her separate statutory property, controlled by the provisions of the statute as distinct from the principles of the common law, applicable to a like estate, and the rules of interpretation to determine now whether the estate created by a deed to a married woman is her separate estate, or her separate statutory property, are those which before prevailed to determine whether it was her separate estate or an estate to which at common law the marital rights of the husband would attach.

That there may be in this State these two estates in a *feme covert* is distinctly recognized by the past judicial history of this State. The nature of these two estates, and the differences between the mode and method of acquiring them are, to a considerable extent, explained in the case of Döllner, Potter & Co. vs. Snow *et al.*, 16 Fla., 96. We will not here repeat what is there said. What we do say, however, in this opinion, is to some extent based upon the views there expressed. With this introduction as to the nature of these estates we reach the question.

Do the words in the premises and *habendum* and *tenendum* of these deeds create a separate estate in the wife?

The general rule as to which there is substantial uniformity upon this subject is that when property is conveyed to a married woman the presumption is that she is to take as

her separate statutory property, and to rebut this presumption and create a separate estate the intent must clearly and affirmatively appear upon a consideration of the whole instrument. The want of uniformity, however, in judicial decisions as to the effect of certain words in deeds is distressingly apparent to any one who will examine the reports of the several States of cases involving the interpretation of words used in deeds of this character. It has been well said that " words themselves are intangible and ever shifting formations in air, changing with their combinations, changing with the lapse of time, changing with the locality, effervescent, never to be exactly caught, yet always within and around us." 1 Bishop, Married Women, 824. It is impossible, as is remarked by Bishop, that uniformity upon such a subject should prevail among judges surrounded by different influences, with different habits of thought, accustomed to hear and to read the utterances of divers minds.

We do not think that there is in these deeds any such clear, unambiguous language denying the marital rights of the husband as is necessary to create a separate estate.

In the case of Lippincott vs. Mitchell, 94 U. S., 767, the *habendum* and *tenendum* of the deed was " to have and to hold to the sole and proper use, benefit and behoof of her, her heirs and assigns forever." We can see no essential difference between these words and those used in the deeds conveying the property here to Mrs. Root. Of this deed the Supreme Court of the United States says:

"If it were intended by this deed to give the wife a separate estate, it is remarkable that * * no words clearly apt for that purpose are to be found. It is remarkable, if such an intent existed, that the phrase, ' for her separate use,' or ' for her exclusive use,' or ' free from the control of her present or any future husband,' or some equivalent

for one of them, was not inserted. The omission can only be accounted for upon the hypothesis that the idea of a separate estate was not in the mind of either of the parties, and that hence no instruction upon the subject was given to the draftsman of the deed. There is nothing in the record to warrant the belief that the purchase and conveyance were not intended to be such a transaction in the ordinary way, without securing to the grantee any special rights touching the property, or any right other than that of the ownership in fee simple.

"The only part of the deed which gives a shadow of support to the proposition of the appellants is the language of the *habendum*.

"The same language is to be found in many precedents in books of forms, where, certainly, there was no purpose to create a separate estate. Thus, in Oliver on Conveyancing, an American work, in the form of a deed by an administrator, page 290, the *habendum* is, 'To have and to hold the same to the said J. C. and W. W., their heirs and assigns, to their sole use and behoof forever.' So, in the form of a deed to a corporation, Ib., 279, 'To have and to hold the same, with the appurtenances thereof, to the said corporation and their assigns, to their sole use and behoof forever.' Instances to the same effect in other like works might be largely multiplied.

"Such was also the ancient English form of the *habendum* except that the term ' only ' was used instead of ' sole.'

"In Lilly's Practical Conveyancer, published in 1719, in the form of a release in fee, the *habendum* is, 'To have and to hold the said,' &c., ' to the only proper use and behoof of the said C. C., his heirs and assigns forever.' And such is the modern English form. Thus, in the form of a deed of feoffment, in 4 Blythewood, 130, the *habendum* is, ' To

have and to hold the said close,' &c., 'to the only proper use of the said [feoffee,] his heirs and assigns forever.'

"We have examined the cases upon the subject, referred to by the learned counsel for the appellants, and many others, both the English and American. Some of them go to a very extreme length in one direction, and some in the other. Not a few of them are in irreconcilable conflict. To examine and discuss them in detail would unnecessarily prolong this opinion, and could serve no useful purpose. We therefore forbear to remark further in regard to them.

"Without the aid of the rule of doubt recognized by all the authorities upon the subject, we have no difficulty in coming to the conclusion that the deed of Austill cannot be held to have vested in the grantee a separate estate, or any other estate than a fee simple."

It is useless to enter into any elaborate comparison of cases upon this subject for the differences cannot be reconciled. There is wanting in these deeds that clear and manifest intention to exclude the marital rights of the husband which is necessary to create a strictly separate estate. The property, therefore, is the separate statutory property of the wife and the rights of all of the parties here must be fixed by the Constitution and the statutes controlling the subject and the principles of equity controlling their interpretation, application and enforcement.

The wife not being subject to a personal judgment at law or in equity it follows that the remedy here, if there be one, is in equity against the rem.—the property. The plaintiffs, therefore, have sought the proper forum to enforce their rights. What is the general rule controlling this subject. It is that she is capable of charging such estate in equity the same as though it were held by a trustee with like limitation as to management and control as those contained in the Constitution and the statutes controlling the subject.

See the cases cited to 2 Bishop Married Women, §203, and the text.

Again, a wife may charge in equity her separate estate under circumstances in which a court of law would deem her personally bound by contract if she were *sole*. This is the substitute which courts of equity have devised in place of the legal power to contract ; that is, when a court of equity makes a married woman a *feme sole* as to her separate estate, it, instead of authorizing her to bind her person by contract, authorizes her to charge the estate in like manner as she would bind her person if she were unmarried. *The authority to charge the estate, therefore, is not an equitable substitute for the authority of a person in her own right to convey but a substitute for the authority to contract.*

In simple language, at law she cannot make a contract resulting in a personal judgment, while in equity she can contract, and if she can contract in equity she can charge her estate precisely as she could at law if she were a *feme sole* and *sui juris*.

A *feme covert* in a court of equity as to her separate statutory property has both the legal and the equitable title, and while under the statute she is not clothed with the rights of absolute dominion, it cannot be said that the investiture of the legal title in addition to the equitable interest which would be the measure of her rights if it was an estate vested in a trustee for her benefit, deprives her of the power to charge her estate if it is of such character as will permit the charge.

The general doctrine as to the separate estate of a married woman, and as to her power to bind or to charge her separate statutory property, so far as her power exists under the statute as well as under trusts, is that a married woman possessed of a separate estate is as to all matters pertaining to such estate, except where she is expressly limited by the

instrument which created it, or the statute under which she has title, regarded as a *feme sole*, and may charge or affect it by any act or contract which would be binding at law if she were unmarried. This is the doctrine stated by Mr. Chief-Justice Dixon in the case of Todd vs. Lee *et al.*, 15 Wis., 373. This case is well considered, all the English and American authorities are reviewed and the argument we think is conclusive.

In this case we have the husband and the wife incurring this debt and both pledging the separate statutory property. The husband under the statute is entitled to the rents and profits of the separate statutory property of the wife, and to the extent that each of them could bind this property without a mortgage or a pledge they have done so. The credit here according to this bill was extended upon the basis of the property which is sought to be charged. Both the husband and the wife agree that it shall be bound and the husband was well known to be insolvent. There can be no doubt of the husband's liability at law, and as he is insolvent his interest and that of his wife should be controlled to pay this debt. The rule prevailing in a court of equity, however, in a case such as this, is to sequester the rents and profits of the property, rather than to sell the corpus or body of the estate. This is the rule which would prevail in equity as to an estate with limitations like those contained in our statute, and we cannot conclude otherwise than that it should prevail here. North American Coal Company vs. Dyett, 7 Paige, 15.

The wife's property is not here subjected to the husband's debt. The property is made responsible for her debt incurred for property to be her separate statutory property and the rents and profits are applied to a debt primarily the wife's because the husband was a party to the contract and agreement to bind it and gave his assent to it. For a court

of equity to do otherwise would be to sanction an iniquitous fraud.

The decree herein rendered is reversed and the case will be remanded with directions to appoint a receiver to take charge of the estate described in the bill and by its management and from the rents and profits to be realized therefrom to discharge the debt of the plaintiffs, unless the defendants wish to take issue upon the facts alleged in the bill, which they may do by proper pleadings, and there may be such other proceedings as are consistent with the opinion herein rendered and conformable to the principles of equity.