Dooley *v.* Crist.

WILLIAM DOOLEY, Appellant, *v.* DAVID L. CRIST, Appellee.

APPEAL FROM McLEAN.

All improvements of a permanent character placed upon land, designed for its better enjoyment, are deemed a part of the land.

By express agreement, improvements of this character may be removed from the land.

Buildings are presumed to be a part of the land, and unless something is shown to overcome this presumption, they will always be so considered.

A stranger who erects a building upon the land of another, will become a trespasser by removing it.

If parties agree upon an exchange of land, and one builds, if the agreement is rescinded without reserving the buildings, they remain with the land.

The intention of a party, at the time a building is erected, fixes its character, if he intended it should be permanent, so it will remain.

THIS declaration was in trover for a house. Plea not guilty. Judgment for plaintiff below. Appeal prayed.

Bill of exceptions shows two judgments before a justice of the peace, both in favor of plaintiff below; one against Phillips, the other against Whitelock; and that executions were issued on the judgments.

Execution against Phillips has a return, showing a levy and sale on the house in controversy.

Execution against Whitelock for $50.50 debt, and $2.66¼ costs, with return showing levy and sale on the house, as above. Sale was for $60, and amount was divided between the two executions, leaving a part of both unsatisfied.

The constable who had above executions, went with them to, or near the house in controversy, and made and indorsed the levy; advertised the house in the usual manner; on day of sale went with plaintiff and one or two others to within a rod of the house, then sold it to plaintiff; Whitelock's family were living in the house at the time of sale; did not see Whitelock; gave plaintiff a writing showing that he had bought the house. The family of Whitelock had been living in the house for some time before the levy, and continued to live there until some time after the sale.

The carpenter who built the house said it was a good frame house of the kind; twenty feet long, sixteen feet wide, one story high, good lumber, well built; stood on eight to twelve blocks, partly in the ground, partly above ground; cost $225; could be moved by raising it off the blocks, but not any more easily than if it had a brick or stone foundation.

About twelve months after date of constable's sale, at the request of defendant, the house was removed from where it·stood to the opposite corner of the forty acre tract of land on which it stood, and it was attached to another house there as an ell, on the same blocks on which it originally stood.

The testimony of *Whitelock*, the defendant in one of the executions, shows that he built the house in controversy on a forty acre tract in possession of and claimed to be owned by Phillips; had Phillips' permission to build it there; when he built it, expected, if he was able to pay for his land adjoining, to keep it, if not, that he would sell it or remove it; heard of the constable's sale a few days after it was made.

Stated that he had contracted by a written contract with defendant, to purchase forty acres of land; that Phillips had also contracted with defendant for another forty acre tract adjoining; witness was son-in-law of Phillips; witness commenced improving his land, where the house in controversy was built; there was not as good a building spot on witness' forty as there

was across the line on Phillips' forty; that witness and Phillips had made a verbal contract for the exchange of an acre; witness got an acre of Phillips, on which the house was built, and gave Phillips one acre in another part of witness' forty; that they each mutually took possession of their said acres, and occupied them for about three years, and up to the time witness left the country; that he occupied the house in connection with his forty acre tract of land; occupied it about three years; never paid defendant anything on the land; a long time after the constable's sale had offered to sell the land, house and all, to William H. Dooley, son of defendant; asked $300 for his interest; was willing defendant should have $200 of it; did not disclose to W. H. Dooley that plaintiff had any interest in the house.

It was agreed that the house stood on a certain forty acre tract, describing it, and that the legal title to the same was in defendant.

Defendant introduced a written contract between him and Phillips for the sale of the forty acres upon which the house stood.

It appeared that the above contract had, by mutual agreement between Phillips and defendant, been cancelled; that shortly after Whitelock left the country, defendant went into possession of both the forty acres of Phillips and Whitelock, and moved the house from where it stood to another house on the Phillips tract, and made of it an ell to the other, and moved into it in the spring; that the house was placed upon the same blocks that it had originally stood upon; that they were good sized blocks, of sound white and burr-oak; the house stands on the same blocks yet, except there has been a cellar dug under part of it, and some of them have been removed for the cellar walls.

Plaintiff's instructions were as follows:

The court instructs the jury that if they believe, from the evidence, that the house in controversy was sold by Whitelock to Crist, or on an execution against Whitelock, and bought by Crist, and that the house was personal estate, and that after the sale was made, Dooley took the same and converted it to his own use, then the jury will find for plaintiff the value of the property at the time of the conversion.

That if Whitelock assented to the levy and sale of the house, and surrendered possession of the house to Crist, made under said levy and sale, then such levy and sale is valid against any person having no right to the house, as creditor or purchaser of Whitelock, unless they find that the house was a part of the real estate.

That if they believe, from the evidence, that Whitelock held

possession of the house as tenant of Crist, or under any agreement with Crist to hold the same and pay him for the use of the same, then in contemplation of law Crist was in possession of the house, and the possession of Whitelock was the possession of Crist.

That the possession of the property in controversy (if personal property) by Whitelock as tenant of Crist, if the jury so find the facts from the evidence, is sufficient, in the absence of other proof, to support title in Crist.

That the law presumes the person in possession of personal property to be the owner thereof, and if the jury believe, from the evidence, that the property in controversy is personal property, and at the time of the taking of the same, was held by Whitelock as tenant, or under an agreement with Crist, then such possession is sufficient *prima facie* title in Crist, in the absence of all other proof, to entitle him to maintain the action.

That if the jury believe, from the evidence, that Whitelock built the house in controversy, on the premises occupied and claimed by Phillips, by the leave and consent of Phillips, with the privilege of moving or doing as he pleased with the same, and Whitelock did so build his said house, and put the same on blocks, without in any manner fastening the same to the blocks or the soil, so that the same could be easily removed, then such house is personal property.

The court instructs the jury, that in this case the question whether the house is real or personal estate is a mixed question of law and fact; that if the jury believe, from the evidence, that Whitelock built the house on Phillips' land, with Phillips' consent, with the intention of removing the same if he saw fit, then the house is personal property, and subject to levy by execution.

That in judging of the intention of Whitelock, it is proper for them to take into consideration all that Whitelock said or did about the property while he occupied it, and before the contest arose.

Instructions given for defendant were as follows:

If the jury believe, from the evidence, that Whitelock claimed the forty acres of land as a purchaser of the same under Dooley, and that he contracted with Phillips for the one acre on which to build the house, for the purpose of getting a better site on which to build the house than was on his own land, and gave Phillips one acre of his (Whitelock's) land in exchange, and that Whitelock and Phillips each mutually took possession of and occupied their several acres of land; and if they further believe, from the evidence, that Whitelock built the house with the intention of occupying it as a permanent residence in con-

nection with the land, then the house became a part of the land and was not liable to the levy and sale, and they should find for the defendants.

In order to make a valid levy on personal property, the officer making the same must take such possession of the property as the nature of the property will admit of, and in order to make a valid sale of personal property by an officer on execution, it must be in the power of the officer, at the time of the sale, to put the purchaser into possession of the property, that is, such possession as the nature of the property admits of.

If the house was real estate at the time it was built, no subsequent change of intention on the part of Whitelock would convert it into personal property.

In trover, the plaintiff must show title in himself, and it is not material whether the defendant is the owner or not; the plaintiff cannot recover without showing title in himself.

That if the jury believe, from the evidence, that Whitelock built the house on his own land, or land that he contracted for, with the intention of not removing the same, then the house is real estate, and passed with the land.

In substance, that if Dooley owned the land, and the house was real estate, then Dooley owned the house.

Defendant offered the following three instructions, and asked that they be given to the jury, which the court refused to do:

If the jury believe, from the evidence, that Whitelock built the house as the owner, or as claiming to be the owner of the soil, the house, as soon as it was built, became a part of the real estate, and no subsequent change of intention on the part of Whitelock will change the character of the property from real estate to personal property.

If the jury believe, from the evidence, that the constable never had possession of the house, and if they further believe, from the evidence, that at the time of the sale the constable did not have it in his power to deliver possession of the house to the purchaser, then the levy and sale are void, and they should find for the defendant.

If the jury believe, from the evidence, that during the whole time, from the levy until the sale, and for some time after the sale, the house was in the actual possession of Whitelock, who claimed the same as his own, adversely to the officer making the levy, then the levy and sale were void.

Motion for new trial overruled.

R. E. WILLIAMS, for appellant.

W. W. ORME, for Appellee.

WALKER, J. Appellee claims the building in controversy under his purchase, at the constable's sale, on the execution against Whitelock and Philips. On the contrary, appellant claims it as a part of the real estate, of which he was the owner. This then involves the inquiry whether it was real or personal property. It is a fundamental rule that real estate embraces lands, tenements and hereditaments. All improvements or additions of a permanent nature and adapted to its use and better enjoyment, placed upon land, are regarded as forming a part of the land. To this rule there are the exceptions of trade fixtures, which cannot have any application to this case. By express agreement between the parties, erections placed upon the land by the tenant during the term may be removed as personal property; or if the owner of the soil were by deed to sell a tenement erected upon the land, it would no doubt become dissevered, and converted from real to personal property. But as a general rule, when a building is erected on land, the presumption is that it is a part of the real estate and not personal property, and to take it out of the operation of the rule, a state of facts must be shown which rebuts the presumption. Even when a stranger constructs a building upon the land of another, without his consent, it becomes a part of the land, and he would become a trespasser by removing it.

This record affords no evidence from which it can be inferred that the appellant, who was the owner of the soil upon which this building was erected, ever consented that it might be removed. He had contracted to sell the land to Mrs. Philips, but that agreement was afterwards rescinded, and when the contract was abandoned by the parties, appellant became undeniably the owner of the land and its improvements, both in law and equity, as no reservation seems to have been made of the house or other improvements. When Whitelock agreed with Philips for the purchase of the acre of land upon which the house was built, and which was embraced in Mrs. Philips' purchase, there seems to have been no reservation or agreement for the removal of the house in any event. Whitelock gave an acre of the land, purchased of appellant, in exchange for the acre upon which the house was erected, and they each entered into possession of the portions thus received in exchange, and so continued until their several contracts were rescinded or abandoned, neither having paid for the land purchased of appellant. This building was a part of the improvement connected with Whitelock's purchase, and it must have been made with the design of permanently remaining on the land, and not for any temporary purpose.

If the intention of Whitelock was to render the improvement

permanent when erected, there can be no question that it became a part of the freehold, and no subsequent change of intention changed its character to that of personal property, rendering it liable to levy and sale on an execution from a justice of the peace. The intention at the time to render it a part of the realty fixed its character beyond all dispute, and that character could not be changed by anything short of its severance by removal or by an executed agreement for that purpose. The mere change of the intention of the owner cannot have that effect. This principle was announced by the first of appellant's instructions, in the series which the court refused to give, and it should have been given. The court below having erred in refusing to give that instruction, the judgment below must be reversed, and the cause remanded.

*Judgment reversed.*