34   509
53   133

34   509
58   473

HENRY SEEDHOUSE ET AL., APPELLANTS, VS. N. B. BROWARD, AS EX OFFICIO ADMINISTRATOR OF MARY DAGENHART, DECEASED, ET AL., APPELLEES.

EQUITY PRACTICE—SERVICE OF SUBPŒNA WHEN SHERIFF DISQUALIFIED—INSTRUMENT PAYABLE IN THE ALTERNATIVE TO TWO OR MORE—INTENT AS TO FIXTURES—WHEN CITATION ON APPEAL NECESSARY.

1. The maxim, *qui facit per alium facit per se*, applies in all its force to the official acts of deputy sheriffs. Under the provisions of Section 5, page 938, McClellan's Digest, whenever the sheriff of a county was a party to or interested in any cause, a coroner of the county, or an elisor appointed specially by the court, was the proper person to serve the subpœna in such cause; and, whenever the service of a subpœna in chancery was made by any other person than the sheriff, the return of such service was required to be made *under oath* by Section 3, page 153 McClellan's Digest. Under this law, whenever the sheriff was an interested party to a suit, he could not, either by himself or through one of his deputies, legally serve or execute any process in such cause.

2. Where a defendant in a chancery cause, in person or by attorney, enters a voluntary general appearance therein, he thereby submits himself to the jurisdiction of the court, and any illegality in the service upon him of the subpœna in the cause is thereby waived and cured.

3. Where it is evident from all the allegations of a bill for foreclosure of a mortgage and the exhibits thereto, filed against the administrator of a deceased married woman, that the mortgaged premises were the "separate statutory property" of such married woman, with the title thereto vested *in her individually*, and not in a trustee for her benefit, a loose general allegation in the bill that such property was her "separate estate." should be ignored as a patent piece of inadvertence, and a demurrer to such bill upon the ground that the supposed trustee who holds the legal title to such property is not made a party defendant to such bill, should be overruled.

4. Under the laws of this State making mortgages nothing more than contracts granting *specific liens* upon property, and re-

quiring judicial action to enforce their provisions, the fact that a mortgage and the note that it secures is made payable in the alternative to one or the other of two definitely named payees does not render them void; but such note and mortgage are enforceable in the courts: *Held, further*, that the better practice in such cases is that all the parties named as alternative payees should join in the suit to enforce such contracts.

5. Erections or additions put upon mortgaged real estate subsequently to the execution of the mortgage, under such circumstances as to stamp them with the character of *fixtures* thereon, and between the mortgagor and mortgagee and persons with notice, become subject to the lien of the mortgage.

6. In establishing whether a given thing is or is not a fixture upon land, the *intention* of the owner in placing it there, to be gathered from his declarations, and from the character, relations and purposes of the property, is an important element—sometimes of controlling importance.

7. No citation upon appeal in a chancery cause is necessary to bring the appellees before this court where the appeal is taken in open court during term time.

Appeal from the Circuit Court for Duval county.

The facts of the case are stated in the opinion of the court.

*J. W. Archibald*, for Appellants.

No appearance for Appellees.

TAYLOR, J.:

Henry Seedhouse and Helen Seedhouse, his wife, the appellants, on March 29, 1890, filed their bill in equity for the foreclosure of a mortgage in the Circuit Court of Duval county against N. B. Broward as sheriff and *ex officio* administrator of the estate of Mary Dagenhart, deceased, Frederick W. Dagenhart and Abram Campbell.

To the bill as originally framed and filed the defendants F. W. Dagenhart and Abram Campbell interposed

separate demurrers, but upon the same grounds, as follows: 1st. That there was no matter of equity in the bill whereon the court could ground any relief as against said two several defendants. 2nd. Practically a repetition of the above. 3rd. That said bill shows that said Mary Dagenhart was a married woman, and prays that a decree be rendered against her for money. 4th. That said bill shows that the property alleged to have been mortgaged was the separate property of the said Mary Dagenhart, and that she has died since its execution, but fails to show that an executor or administrator has been appointed to administer said estate. 5th. That the bill shows the property mortgaged to have been the separate property of the said Mary Dagenhart, a married woman, but fails to show that she was cognizant of the agreement alleged in the bill by which the engine, boiler and machinery was to become a part of said statutory estate. 6th. That said bill alleges that the said Dagenhart promised and agreed to purchase the said engine, boiler and machinery, and to place the same on a brick foundation, so as to become an appurtenant to the land specifically mortgaged, and to become a part of the security for the payment of said sum of money, but fails to show that such agreement or promise, or any memorandum or note thereof was in writing signed by the said Dagenhart. 7th. That said bill shows that said alleged promissory note is in the alternative, to pay Henry Seedhouse or Helen Seedhouse, his wife. 8th. That said alleged mortgage deed annexed to and made part of the bill of complaint creates an uncertainty as to who is grantee intended. These demurrers to the original bill were sustained by the court as to the *fourth* ground thereof, but were overruled as to the other grounds set out above. The complainants then

by leave of the court amended their bill, that with the amendments made alleges in substance as follows: That on or about the 25th of January, A. D. 1886, Frederick W. Dagenhart applied to complainants for a loan of money to purchase an engine and boiler and other machinery for the purpose of establishing a sausage factory. That the said Dagenhart promised and agreed to purchase the said engine, boiler and other machinery and to place the same on a brick foundation so as to become an appurtenant to the south-western one-half of Lot 3 in Block 24 of River- side, which said property was the separate estate of the said Mary Dagenhart, and the said machinery, boiler, engine and buildings were to improve and en- hance the value of said realty, and were placed thereon with her full knowledge and consent and received the full benefit thereof, and enjoyed the proceeds thereof, and to become a part of the security for the repayment of the said sum of money to be borrowed by the said defendant. That in accordance with said agreement complainants loaned to the said Dagenhart the sum of one thousand dollars, and the said Dagenhart did pur- chase with the funds so borrowed the said engine, boiler and machinery and placed them upon the lot as he had agreed to do, thereby by reason thereof becom- ing a part of said realty, and thereby greatly enhancing the value thereof. That to secure the payment of said loan the defendants F. W. Dagenhart and Mary, his wife, did on the first day of February, 1886, make and deliver to complainants their promissory note whereby they promised to pay to the complainants Henry Seedhouse *or* Helen Seed- house the sum of one thousand dollars three years after its date, with interest from date until paid at the rate of 10 per cent. *per annum,* payable quarterly;

JUNE TERM, 1894. 513

Henry Seedhouse et al. v. N. B. Broward, Admr.—Opinion of Court.

and that to secure the payment of said principal and interest the said Dagenharts did at the same time execute under their hands and seals, and deliver to the said Henry Seedhouse a mortgage deed upon and to that parcel of land situated in Duval county, Florida, more particularly described as being the south-western half of lot number three (3) in square number twenty-four (24), being bounded on the north-east by the north-eastern half of said lot, on the south-east by lot number six (6), on the south-west by lot number four (4), all in said square number twenty-four (24), and on the north-west by Oak street, said half lot herein and hereby conveyed measuring from north-east to south-west fifty-two and one-half (52½) feet, and from north-west to south-east one hundred and five (105) feet, being the same piece of land conveyed by deed to Mary Dagenhart, dated January 14th, 1885, and recorded in Book H, pages 62 to 65. That said mortgage duly executed was delivered to the said Henry Seedhouse and Helen Seedhouse, his wife, and on the fifth of February, 1886, was duly recorded by the Clerk of the Circuit Court of Duval county, Florida, as a mortgage in Book U, page 153 of the public records of said county, which said mortgage was upon the proviso and condition that if the said Mary Dagenhart and Frederick W. Dagenhart, their heirs, executors and administrators should well and truly pay the said sum of money when due, with the interest thereon, according to the true meaning and intent of said promissory note, and all costs, charges and expenses, including attorneys' fees, which the parties of the second part might incur or be put to in collecting the same by foreclosure, that then in that event the said mortgage should cease and determine, and be null

33

and void.   That in and by said mortgage deed the said Mary Dagenhart and F. W. Dagenhart did covenant, promise and agree to and with the said Henry and Helen Seedhouse to pay the said sum of money, principal and interest, when due, and all costs and charges, including attorneys' fees as aforesaid.   That said mortgage deed with said note copied therein is hereto annexed and made part of this bill of complaint.   That on or about May 1st, 1889, as complainants are informed and believe, the said Frederick W. Dagenhart sold said engine, boiler and other machinery that he had placed upon said lot under and by virtue of his agreement with these complainants, and which had become a part of said realty, to the defendant Abram Campbell, and that the same had been removed from said lot without the knowledge or consent of complainants.   That prior to the purchase of said engine, boiler and machinery from the said Dagenhart by the said Campbell they came together to the office of J. W. Archibald, the solicitor for these complainants, who had the collection of this mortgage in his hands, and spoke to him of the contemplated purchase, and the said Archibald then and there informed the said Campbell and the said Dagenhart that the said engine, boiler and machinery was a part and parcel of the mortgage security, and that the said mortgagees claimed it, and if the said mortgage had to be foreclosed it would be sold as part of the security; that the said Campbell then and there declined to proceed with the purchase, and, in the hearing of the said Archibald, told the said Dagenhart that he would not complete the purchase.   That upon the return of complainants to Florida in January of the present year they took a look at the mortgaged premises and were surprised to find that the said engine, boiler and

machinery had been removed therefrom, and the buildings erected over them had been destroyed, and that upon inquiring as to the whereabouts of said engine, boiler, machinery, etc., found that they had been bought by the said Abram Campbell from the said F. W. Dagenhart after the death of said Mary Dagenhart. That the sale of the said engine, boiler and machinery by the said Dagenhart to the said Campbell was a fraud upon the rights of complainants, and that the said Campbell, having notice of the rights of complainants, acquired no rights in said property as against them, but they are afraid that he will dispose of said property to some innocent purchaser without notice of the equities of complainants, and thereby jeopardize their security; and the complainants aver that without the engine, boiler and machinery their security is not sufficient to repay them their money, interest and costs. That since the execution of said note and mortgage the said Mary Dagenhart has departed this life, and that on January 8th, 1890, the said N. B. Broward was by the Hon. W. B. Owens, Probate Judge of the county of Duval, duly appointed as administrator of her said estate, and ordered to take charge of and administer upon her estate, and that he duly qualified and proceeded to act under such order. That the sum of one thousand dollars mentioned in said note and mortgage, with interest thereon from the first day of May, A. D., 1889, is due and remains unpaid to your orators. The prayers of the bill are, that an account may be taken of what is due upon said note and mortgage for principal and interest, and the costs, charges and expenses of the suit, including attorneys' fees therein. That the defendants Mary Dagenhart and Frederick W. Dagenhart be decreed to pay the same; and that the defendants Mary Dagen-

hart and Frederick Dagenhart, and all persons claim-
ing by, under or through them subsequent to the exe-
cution of said mortgage, and all other persons, al-
though not parties to this suit, who have any liens of
judgment or decree subsequent to the mortgage of
complainants, may be barred and foreclosed of all
equity of redemption and claim of, in and to the said
mortgaged premises, and every part and parcel thereof,
with the appurtenances. That in default of said pay-
ments as aforesaid, all and singular of the said mort-
gaged premises be sold under decree of this court, and
that out of and from the proceeds arising from the
sale thereof there may be paid, first, the taxes, if any
remain unpaid thereon; second, the costs, charges and
expenses of this suit, including attorneys' fees; third,
the principal sum mentioned in said note and mort-
gage, with the interest thereon. That a special master
be appointed to take account of the amount due to
complainants on the note and mortgage for principal,
interest, costs, charges and attorneys' fees. There is
also a prayer for general relief, for subpœna and for
injunction to restrain the defendant Abram Campbell
from selling or encumbering the said engine, boiler and
machinery.

The original mortgage is attached to the bill as part
thereof, and in this mortgage the lot of land therein
included is partly described and referred to as "being
the same piece of land conveyed by deed to Mary
Dagenhart dated January 14th, 1885, recorded in Book
H, pages 62 to 65." The mortgage conveys the lot de-
scribed, "together with all and singular the tenements,
hereditaments and appurtenances thereunto belonging
or in anywise appertaining." The mortgage contains
further an express covenant that the mortgagors are
lawfully seized of the premises thereby conveyed in

JUNE TERM, 1894.          517

Henry Seedhouse et al. v. N. B. Broward, Admr.—Opinion of Court.

fee simple, and that they have good right to sell and convey the same to the mortgagees. The note, a copy of which is incorporated in the mortgage, is made payable to Henry Seedhouse *or* Helen Seedhouse, and while the mortgage in its initiatory clause, descriptive of the parties between whom it is made, describes the party of the second part or mortgagees as being Henry Seedhouse *or* Helen Seedhouse, yet in its granting clause conveys the property to the party of the second part and to "*their* heirs and assigns," and its *habendum* clause provides that the premises, with its appurtenances, shall be held "unto the said *parties* of the second part, *their* heirs and assigns." Upon the verified bill and some accompanying affidavits a temporary injunction was granted as prayed for.

To the bill as amended the defendants F. W. Dagenhart and Abram Campbell again interposed their several demurrers, each of them demurring thereto upon the same grounds, as follows: 1st. Because said amended bill alleges that the real estate alleged to have been mortgaged, and sought to be charged, is the separate estate of the said Mary Dagenhart, but said bill does not disclose in whom the legal title is vested for her benefit, nor is the said trustee made a party defendant to said bill. 2nd. Because said amended bill shows that said alleged promissory note is in the alternative, to pay Henry Seedhouse *or* Helen Seedhouse, his wife, and is on that account void for uncertainty. 3rd. Because the mortgage deed annexed to and made part of said bill creates an uncertainty as to who is the grantee intended, and is on that account void as to both Henry Seedhouse and Helen Seedhouse, his wife. 4th. That the court can not render the decree for the sale of the said property as prayed for, for that it is shown by the said bill to be the separate

estate of the wife, and that an indispensable party de- fendant is omitted to be made.

The defendant Abram Campbell along with his de- murrer to the amended bill also filed his several plea to the bill, in which it is alleged that the engine, boiler and other machinery was purchased and placed upon the premises in question some time after the said mortgage had been executed by the Dagenharts, and that it did not thereby become a part of the said realty and part of the security for the repayment of said sum of money, and that when he purchased same from the defendant F. W. Dagenhart it was not subject to said mortgage lien. On the last of September, 1890, the demurrer of Abram Campbell to the amended bill was sustained by the court; and on the 29th of November, 1890, the demurrer of F. W. Dagenhart to said amended bill was also sustained, and in the order of the court sustaining same it is further ordered as follows: "And the demurrer interposed by Abram Campbell on the same day having been heretofore sustained, it is ordered that the bill filed herein be dismissed as to these defendants." On the same day, and in open court, as is recited in the record, the complainant en- tered their appeal from the last mentioned orders to this court.

Before dealing with the questions presented by the rulings upon the demurrers, we will notice an irregu- larity that appears in the service of the subpoena in the cause. The return of service, endorsed on such subpoena, shows that said subpoena was served upon the defendants N. B. Broward and Abram Campbell by N. B. Broward as sheriff of Duval county, by one J. A. Vinzant as Broward's deputy. The maxim, *qui facit per alium facit per se*, applies in all its force to the official acts of deputy sheriffs. They act officially for-

and in the name and stead of their principal, and all of their official acts are the acts of their principal. Under the law, as it existed at the time of the attempted service of this subpœna (sec. 5, p. 938 McClellan's Digest) whenever the sheriff of a county was interested in any cause, a coroner of the county, or an elisor appointed specially by the court, was the proper person to serve all writs in such cause; and whenever the service of a subpœna in chancery was made by any other person than the sheriff, the return of such service was required to be made under oath (sec. 3, p. 153 McClellan's Digest). Mr. Broward being an interested party to the suit, could not, either in person or through a deputy, legally serve or execute any process therein upon any of the defendants therein, and particularly so as upon himself; and were it not for the subsequent voluntary appearance of the parties in the cause through their attorneys, we should, without hesitation, declare that the court below had never acquired jurisdiction over the persons of the defendants Broward and Campbell therein. The defendant F. W. Dagenhart being out of the State, was served by publication. On the 5th day of May, 1890, the rule day to which the subpœna was made returnable, however, the following entry of appearance was filed and made in the cause:

"In Circuit Court, Fourth Judicial Circuit of Florida, Duval County,.
In Chancery.

Henry Seedhouse and Helen Seedhouse vs. Frederick W. Dagenhart, Abram Campbell *et al.*

The clerk of said court will please enter defendants' appearance in foregoing suit.

Yours truly,
T. A & B. B. MacDonell,.
Defendants' Solrs."

This appearance, we think, is a general one for all of the defendants in the cause, though only two of them are expressly named in the heading of the paper by which the cause is identified to which the appearance is to apply. The only other defendant in the suit not specially named therein was N. B. Broward, and he is referred to and included therein by the use of the abbreviated "*et alius*." Had it been the intention to limit this appearance to Dagenhart and Campbell, the two defendants expressly named in the style of the cause, then the body of the appearance should have confined it to them, but this is not done; the direction to the clerk therein is, in the most general terms, to "enter defendants' appearance in foregoing suit." No question is raised during any subsequent stage of the suit as to Broward not being brought in as a party defendant, yet we find the same solicitors who entered this appearance subsequently objecting as a ground of demurrer to the bill that a supposed trustee for Mary Dagenhart's mortgaged property has not been made a party defendant, thus showing that they regarded Broward, as her administrator, as being properly before the court. And again, in the subsequent pleadings interposed by the same firm of attorneys on behalf of the defendants, Dagenhart and Campbell, pains seem to have been taken to specify particularly therein on whose especial behalf each pleading was interposed. Had this appearance been intended only for Campbell and Dagenhart, it is fair to assume that the like particularity would have been exercised therein. The firm of solicitors who entered this appearance are well known and reputable members of the bar, and the presumption is that they would not have assumed to appear thus generally for all the defendants in a cause unless duly authorized so to do. For these

reasons we think that the appearance entered was a general voluntary one for the defendant Broward, as well as for the others, and that thereby the illegality of the service of the subpœna has been waived and cured, and that the court by means of his voluntary appearance acquired full jurisdiction over his person in the cause. No point or question has been made here upon this irregularity in the service, but, we have noticed and dwelt upon it because of some difference of opinion in the minds of the court as to whether the appearance entered could be construed as an appearance for the defendant Broward, thereby doing away with the necessity for service of subpœna upon him in the regular way.

As to the first ground of the demurrer to the bill as amended we find that there is a loose general allegation in the bill that the real estate covered by the mortgage is the "separate estate" of Mary Dagenhart, but it is evident from other parts of the bill, and especially from the mortgage, made a part thereof, that this allegation was the result of inadvertence on the part of the draughtsman of the bill, who, evidently, at the time, was unmindful of the technical distinction established in this State between the generic terms "separate estate" and "separate statutory property," as applied to the property of married women. The wife's *separate estate* being an *equitable* estate where the legal title is vested in some other person as trustee for her benefit, her *separate property*, or *separate statutory property*, being all property the legal title to which is vested in her individually for her own use and benefit. Dollner, Potter & Co. vs. Snow, 16 Fla., 86; Harwood vs. Root, 20 Fla., 940. The bill in describing the mortgaged land describes it as "being the same piece of land conveyed by deed to

Mary Dagenhart dated January 14th, 1885, and recorded in Book H, pages 62 to 65." The mortgage itself attached as a part of the bill describes it also in the same way, and, in addition to this the mortgage asserts in one of its covenants that the mortgagors "are lawfully seized of the said premises in fee simple and have good right to sell and convey the same," etc. All of which negatives the idea that the title to said property rests in a trustee, and that the technical term *separate estate* properly applies thereto. We think that the bill and its exhibits contains enough to show that the legal title to the mortgaged premises was in Mary Dagenhart, and that in executing the mortgage she was authoritatively establishing a lien upon property owned by her as her "separate property," and we think that the patently careless use of the expression "separate estate" in the bill should have been ignored, and the feature of the demurrer founded thereon overruled as being too technical.

There is no merit in the second and third grounds of the demurrer to the amended bill predicated upon the fact that the mortgage and note secured thereby are made payable in the alternative, to Henry Seedhouse *or* Helen Seedhouse, his wife. This court has repeatedly held that a mortgage under our statutes does not divest the mortgagor of the legal title, nor vest it in the mortgagee, but that it creates only a specific lien upon the property covered thereby; and, in effect, that a mortgage, of itself, is not a conveyance of the property, but a contract between the mortgagor and the mortgagee whereby the former grants to the latter a specific lien upon his property. McMahon vs. Russell, 17 Fla., 698; Berlack vs. Halle, 22 Fla., 236; Roan vs. Holmes, 32 Fla., 295, 13 South., 339. Viewed as a contract, requiring the interposition of judicial action to

enforce its provisions, we are at a loss to discover any reason why the fact that it and the debt it secures is made payable to one or the other of two parties definitely named therein should render it void. There are many cases in the books where contracts made payable similarly in the alternative have been recognized and enforced by the courts. Osgood vs. Pearsons, 4 Gray, 455; Willoughby vs. Willoughby, 5 N. H., 244; Walrad vs. Petric, 4 Wend., 576; Spaulding vs. Evans, 2 McLean (C. C.), 139; Prindle vs. Caruthers, 15 N. Y., 425. There is some variance in the authorities as to whether, in such cases, the action can be maintained alone by either of the parties named as alternative payees, or whether it must be instituted jointly by both of the payees—see authorities *supra*. We are inclined to the opinion that the better practice is that all of the parties named as alternative payees should join in the suit to enforce such a contract, as has been done in the case under consideration.

We think the allegations of the bill to the effect that the engine, boiler and machinery mentioned were put upon the land mortgaged and became an appurtenant thereto as part of the realty and became fixtures thereon, and part of the security for the complainants' claim, are sufficient to put the defendants to their answer to meet it. If their annexation to the land was made under such circumstances as to stamp them with the attributes of fixtures, it makes no difference that they were placed upon the land subsequently to the execution of the mortgage, as between the mortgagor and mortgagee and persons with notice, they became subject to the lien of the mortgage without any special mention of them being made in the mortgage. 8 Am. & Eng. Ency. of Law, p. 50 *et seq.* and citations; 1 Jones on Mortgages (4th ed.), 428 *et seq.* and citations.

In establishing the fact whether a given thing is or is not a fixture upon land, the *intention* of the owner in placing it there, to be gathered from his declarations, and from the character, relations and purposes of the property, is an important element, sometimes of controlling importance.   Rogers vs. Brokaw, 25 N. J. Eq., 496; Jones vs. Ramsey, 3 Ill., App., 303; Robertson vs. Corsett, 39 Mich. 777; Perkins vs. Swank, 43 Miss., 349; Wolford vs. Baxter. 33 Minn., 12, S. C., 53 Am. Rep., 1; Ottumwa Woolen Mill Co. vs. Hawley, 44 Iowa, 57, S. C., 24 Am. Rep., 719; Sweetzer vs. Jones, 35 Vt., 317, S. C., 82 Am. Dec., 639; Winslow vs. Merchants Insurance Co., 4 Met., 306, S. C., 38 Am. Dec., 368; Holland vs. Hodgson, L. R., 7 C. P. Cases, 328; Harris vs. Haynes, 34 Vt., 220; Dooley vs. Crist, 25 Ill., 551; Arnold vs. Crowder, 81 Ill., 56, S. C., 25 Am. Rep., 260.   As proof of the *attention* with which the Dagenharts placed this engine, etc., upon this land, that they placed it there with the *intention* that it should become a *permanent improvement and addition* to the realty, the complainants will be permitted to prove the allegation in their bill in reference to the agreement by Dagenhart to purchase such engine and machinery with the money loaned, and to place it upon the property as a fixture, and that he so did in compliance with such agreement; but, unless the facts and circumstances connected with the placing of such engine, machinery, etc., upon the land are sufficient to stamp it in law as a fixture thereon, the complainants can not enlarge the scope of their mortgage by proof of a cotemporaneous agreement, not included in the mortgage itself, to the effect that a thing not a fixture in law or in fact should be considered and treated as such.   They can prove the alleged agreement, not that such agreement of its own force makes that a fixture

that otherwise would not be, but as a circumstance that tends to show with what *intent* the machinery was placed upon the land, such *intent*, as before shown, being an important element in determining whether it is or is not a fixture. Taylor vs. Collins, 51 Wis., 123, 8 N. W., 22.

The court below erred in sustaining the demurrers to the amended bill, and in dismissing the bill as to the demurrants; said demurrers should have been overruled and the demurring defendants required to answer.

No citation upon the appeal taken appears to have been served upon the defendant Broward as administrator; the record, however, shows that the appeal was taken in open court, during a regular term, and upon the same day when the order appealed from was pronounced. Under these circumstances no citation was necessary to bring him or any of the defendants before this court upon the appeal. Sec. 6, p. 841 McClellan's Digest.

The orders appealed from are reversed with directions to overrule the demurrers interposed by the defendants Campbell and Dagenhart, and for such further proceedings as shall be proper in the premises.

Liddon, C. J., dissenting:

I find myself unable to agree with the majority of the court in the conclusion reached in this case. I think that instead of reversing the decree of the court below, we should have dismissed the appeal for reasons hereinafter stated. It is conceded in the opinion of the court that the service upon Broward, *ex officio*

administrator of Mary Dagenhart, deceased, was a
nullity, but that want in service was cured by an entry
of appearance on behalf of this defendant.  I do not
think the record shows any appearance in his behalf,
or that he was before the court when the orders ap-
pealed from were made, or when the appeal was taken.
The entry of appearance which is relied upon by a
majority of the court as curing the illegal service of
subpœna, after stating the venue in the form usual for
papers filed in the courts, was as follows:

"Henry Seedhouse and Helen Seedhouse vs. Fred-
erick W. Dagenhart, Abram Campbell *et al.*

The clerk of said court will please enter defendants'
appearance in foregoing suit.

Yours truly,

T. A. & B. B. MacDonell,

Defendants' Solrs."

In this appearance the names of all the parties, both
complainants and defendants, are given, except that
of the defendant Broward as administrator.  The
names are not even abbreviated by initials, but are
stated deliberately and fully.  From this circumstance
and from other matters hereinafter stated, I do not
think that Messrs. T. A. & B. B. MacDonell intended
to appear for Broward as administrator. I think there
was a purpose in leaving his name, which, according
to the title of the cause, should have appeared first,
out of this entry of appearance.  I grant that this
entry of appearance is somewhat indefinite.  The
writing of the abbreviations *"et al."* after the names
of the other defendants raised some presumption that
the solicitors named intended to appear for Broward.
This slight presumption is overwhelmed by all the
other facts and circumstances of the case—to such an
extent that I am forced to the opinion that the appear-

ance was not intended to be on behalf of Broward as administrator. Among other circumstances which constrain me to this belief are the following: The solicitors who entered the appearance never afterwards in the progress of the cause signed themselves as solicitors for the defendant Broward, although they many times afterwards signed as solicitors for the other parties or either of them. They filed two different demurrers for each of the other defendants, signing as counsel for them, but never filed any demurrer or other pleading or paper whatever in behalf of Broward. The title of the cause is stated more than twenty-five times in the record, and the name of Broward appears as the first named defendant (with one exception) every time the cause is named, except in the said entry of appearance. Broward himself, complainants' solicitor and the solicitors for the other defendants, have in the whole case acted as if Broward had not been served or appeared, and was not a party. The complainants' solicitor evidently did not consider the appearance as made on behalf of Broward, because he took no default or decree *pro confesso*, to which he was entitled if there was such an appearance. Mess. T. A. & B. B. MacDonell evidently did not consider that they had appeared for Broward as administrator, because they filed no demurrer or answer for him, did not cause him to join in the demurrer of the other defendants, and took no steps whatever in his name to protect the estate which he represented. If anything were needed to confirm the view that these gentlemen did not appear for Broward, it seems to me that such confirmation is furnished beyond all question by their acceptance of service of the citation upon appeal to this court. This citation was addressed to all of the defendants, Broward being one of them. They accept

service in the names of Dagenhart and Campbell, and do not accept for Broward. Broward does not appear to have been present either in person or by attorney when any of the decrees and orders—four in number —were made in the court below. In view of all these things I do not think that Broward appeared in the court below, or that he was regarded as appearing by the parties to the suit. It devolved upon the complainants who sought to recover from the estate represented by him to show clearly that he was before the court. If no legal service was made, then there should have been an undoubted entry of appearance in his name, or some act done like the filing of a plea of demurrer, in the case. I can not hold that a party has waived a right to a legal and proper service of subpœna by such a doubtful and equivocal act as this entry of appearance; especially am I unable to so hold under the circumstances of this case.

The clerk in making up the record in this case recites that the defendants appeared by filing the appearance hereinbefore quoted. This recital is of no binding force or effect as showing the appearance of the defendants. Such entries of appearance, although general in their terms, are confined to the defendants who have been served with subpœna. Dean vs. McKinstry, 2 Smedes & M., 213; Miller vs. Ewing, 8 Smedes & M., 421; Edwards vs. Toomer, 14 Smedes & M., 75; Torrey vs. Jordan & Smith, 4 How., (Miss.), 401; Chester vs. Miller, 13 Cal., 558.

It is my opinion that the record does not show that Broward as administrator was before the Circuit Court at all. That he was, therefore, not such a party as was bound by the taking of an appeal in open court. He has not been served with citation upon appeal, and is not before this court. I am of the opinion that this

court has no jurisdiction to render the opinion herein, which determines the liability of the estate of Mary Dagenhart for the mortgage indebtedness sued upon, for the reason that Broward, the administrator, was not properly made a party to the proceedings below, and not having been brought here upon citation, and not having appeared here, is not before this court. The court ought not to determine the liability of the estate in the absence of its legal representative.    It is a fundamental principle applicable to all courts of appellate as well as original jurisdiction, that a court can not adjudicate upon a person's rights without having him directly or constructively before it.    Elliott on Appellate Procedure, sec. 154, treating of what persons should be appellees, says : "In determining against whom an appeal may be prosecuted, it is important to keep in mind the cardinal rule that it is essential to an effective judgment, that all of the interested parties should be in court.    Parties are necessary to the effectiveness of judgments of appellate tribunals as well as to the judgments of trial courts." Also to same effect are Gregory vs. Stetson, 133 U. S., 579; Moore vs. Held, 73 Iowa, 538, 35 N. W., 623; Gray vs. Havemeyer, 3 C. C. A., 497, text 504, 505, 53 Fed., 174; 10 U. S. App., 456; Hamilton vs. Blair, 23 Oregon, 64, 31 Pac., 197; Nixon vs. Wichita Land and Cattle Co., 84 Texas, 408, 19 S. W., 560; Shields vs. Barrow, 17 How., 130; Coiron vs. Millaudon, 19 How., 113; Denegre vs. Mushet, 46 La. Ann., ——, 14 South., 348.    In the case of Wright vs. Red River County Bank, 2 Texas Civil App., 97, the appellate court dismissed an appeal because it appeared that persons whose interests would be affected by the appeal had not been made parties thereto.    To the same effect are

34

the cases of Young vs. Russell, 60 Texas, 684; Richardson vs. McKim, 20 Kansas, 346; Browne's Appeal, 30 Kansas, 331, 1 Pac., 78. The most of the cases cited were those in which an appeal was taken by a party who failed to cite his co-party as a co-appellant, but the principle that all parties to be affected by the judgment should be before the court, applies as well to those who should be made appellees as to those who should be made appellants. Denegre vs. Mushet, *supra;* Steele & Walker vs. Baum, 51 Kansas, 165; McPherson vs. Storch, 49 Kansas, 313, 30 Pac., 480; Young vs. Russell, 60 Texas, 684, text 687 *et seq.*

As this court can not determine the questions involved in a consideration of the rulings of the court appealed from without determining the liability of Broward as administrator, and the validity of the mortgage sought to be enforced against the estate of his intestate, as said party was not before the court below, nor before this court, I think this court has no jurisdiction of the person sufficient to determine the questions involved, and the appeal should be dismissed.